Argued and submitted October 4, reassigned November 21, ballot title certified as modified December 12, 1989

## OREGON CITIZEN'S ALLIANCE,
*Petitioner,*

*v.*

## ROBERTS,
*Respondent.*

(SC S36451)

## KANE,
*Petitioner,*

*v.*

## ROBERTS,
*Respondent.*

(SC S36444)

## KLAUSS et al,
*Petitioners,*

*v.*

## ROBERTS,
*Respondent.*

(SC S36458)

(Cases consolidated for argument and opinion)

783 P2d 1001

600

Melanie E. Mansell, Staff Attorney, Wilsonville, filed the petition and argued the cause for petitioner Oregon Citizen's Alliance.

Henry Kane, Beaverton, filed the petition and argued the cause *pro se* for petitioner Kane.

Emily Simon, Portland, filed the petition and argued the cause for petitioners Klauss and Gernegliaro. With her on the petition were Geoffrey Squire Silver, Katherine Brown, Leland R. Berger, Sandra J. Childs and Dimon, Kramer & Toth-Fejel, Portland.

Robert W. Muir, Assistant Attorney General, Salem, argued the causes for respondent. John A. Reuling, Jr., Assistant Attorney General, Salem, filed the answering memoranda for respondent. With him on the memoranda were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

PER CURIAM

## PER CURIAM

In this ballot title proceeding (consolidating three petitions for purposes of argument and opinion), petitioners Oregon Citizen's Alliance, Henry Kane, and Damian Klauss and Maryann Gernegliaro challenge a ballot title certified by the Attorney General for an initiative measure that would amend the Oregon Constitution to prohibit abortion, except "to prevent the death of the mother and in reported cases of rape or incest."[1] We review pursuant to ORS 250.085(4).[2]

In accordance with ORS 250.067(2), the Attorney General certified the following ballot title to the Secretary of State:

"AMENDS OREGON CONSTITUTION TO PROHIBIT ABORTION WITH THREE EXCEPTIONS

"QUESTION: Shall state constitution prohibit abortions except to prevent death of pregnant woman and in reported cases of rape or incest?

"EXPLANATION: Adds new provision to Oregon Constitution. The new provision would prohibit abortion with three exceptions. The exceptions, in which abortion would not be prohibited, are to prevent the death of the pregnant woman and in reported cases of rape or incest. The new provision would prohibit state or local government authorization, support or funding of abortions that are outside the three exceptions. The new provision does not itself establish penalties or sanctions for persons who are involved with prohibited abortions."

Each petitioner alleges that the ballot title does not

---

[1] The full text of the proposed initiative measure is:

"Article I of the Oregon Constitution is amended by addition of a new Section 41:

"41. Notwithstanding any provision of this Constitution, abortion is prohibited except to prevent the death of the mother and in reported cases of rape or incest."

[2] ORS 250.085(4) provides:

"The court shall review the title for substantial compliance with the requirements of ORS 250.035 and 250.039, and shall certify a title meeting this standard to the Secretary of State."

comply with the requirements of ORS 250.035(1)[3] and each petitioner suggests alternative language. ORS 250.085(2). In addressing these contentions, we review the ballot title for "substantial compliance" with the statutory requirements.

## THE CAPTION

### (Subject of the Measure)

■ Petitioners Klauss and Gernegliaro argue that the Caption does not "reasonably identify" the subject of the measure because "the subject matter is the elimination of rights." It is true that the *effect* of the measure *may* be to prohibit certain presently permissible activity. Nonetheless, the subject matter of the measure is the prohibition of abortion, the Caption states as much, and it thus complies with the requirements of ORS 250.085(1)(a).

## THE QUESTION

### (Chief Purpose of the Measure)

■ Petitioners Klauss and Gernegliaro again assert that the question does not "plainly phrase the chief purpose of the measure" and that it is "partial and inaccurate" because it fails to inform voters that the chief purpose of the measure is "to unconstitutionally restrict existing rights." The "chief purpose" of a measure is the most significant aim or end which a measure is designed to achieve. *Reed v. Roberts,* 304 Or 649, 654, 748 P2d 542 (1988). As we stated above, although an effect may be to prohibit certain presently permissible activity, the measure is designed to prohibit abortion. There is no plainer way to state it.

Petitioner Oregon Citizen's Alliance claims that the term "pregnant woman" in the question should be replaced by "mother" because the term "mother" is the language in the

---

[3] ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

measure and would thus "be the controlling constitutional language in case the measure were adopted." The Attorney General responds by stating that "[s]ince without doubt all will agree that the proponents' 'mothers' are pregnant women, the ballot title properly uses the accurate and neutral term."

There is no doubt that only pregnant women can obtain abortions. The Attorney General's wording adequately explains the chief purpose of the measure. The issues of when life begins or when someone becomes a mother are not decided here.

## THE EXPLANATION

### (Summary and Major Effect)

■ Petitioners Klauss and Gernegliaro renew their arguments about elimination of rights, stating that the measure "attempts to take away a woman's right to be free form [*sic*] gender based discrimination." As the Attorney General correctly points out:

> "Assuming *arguendo* that the measure would 'take away a woman's right to be free from gender based discrimination,' it would do so only by eliminating or limiting her right and opportunity to have an abortion. Thus, nothing is left unsaid when the ballot title informs voters of what the measure does."

Petitioner Oregon Citizen's Alliance maintains that the Explanation should include the phrase "[m]akes abortion for reasons of social convenience, which are outside the three exceptions, against public policy" because this statement more accurately summarizes the measure and its major effect. They further maintain that the phrase "in which abortion would not be prohibited" in the third sentence is "unnecessary verbiage." The measure does not purport to make a statement about public policy; it simply prohibits certain activities. With respect to this petitioner's second complaint, because the disputed language substantially complies with the requirements of ORS 250.035(1)(c), we see no reason to change it.

Petitioner Kane objects to the last two sentences of the Explanation as conjecture and speculation. We agree with Petitioner Kane that the last two sentences of the Explanation are conjecture. In this case, we have a situation where the

major effect of the measure corresponds directly with its purpose. Although it is possible to speculate on secondary effects of the measure, it is inappropriate for the Attorney General to choose two potential secondary effects from a universe of such effects and to place them in the Explanation. The Explanation may contain up to 85 words, yet there is no requirement that it do so. A ballot title, although it may have extremely far-reaching ramifications, may require relatively few words to explain. A greater number of words may obfuscate as well as clarify.

In summary, we certify the following ballot title to the Secretary of State:

## AMENDS OREGON CONSTITUTION TO PROHIBIT ABORTION WITH THREE EXCEPTIONS

QUESTION: Shall state constitution prohibit abortions except to prevent death of pregnant woman and in reported cases of rape or incest?

EXPLANATION: Adds new provision to Oregon Constitution. The new provision would prohibit abortion with three exceptions. The exceptions, in which abortion would not be prohibited, are to prevent the death of the pregnant woman and in reported cases of rape or incest.

Ballot title certified as modified.

**CARSON, J.,** dissenting

For the most part, I agree with the ballot title certified by the majority. However, I disagree with the approval of the Attorney General's substitution of the words "pregnant woman" for the word "mother."

ORS 250.085(4) provides that the court shall review the Attorney General's ballot title for "substantial compliance" with the requirements of ORS 250.035 and 250.039. The issue is whether the Attorney General's ballot title "reasonably identifies" the subject matter of the measure, plainly phrases the chief purpose of the measure, and summarizes "the measure and its major effect." Where the Attorney General goes beyond his statutory authority and needlessly substitutes his language for the language of the measure, he has not substantially complied.

The Attorney General argued that "[s]ince without doubt all will agree that the proponents' 'mothers' are pregnant women, the ballot title properly uses the accurate and neutral term." The majority apparently concurs and allows the Attorney General to decide that the proponents of the measure do not mean what they say, but rather that they mean the measure to apply to a "pregnant woman."

By simply reasoning that the words "pregnant woman" are "accurate and neutral," the Attorney General has created a ballot title that textually differs from the proposed measure itself. Whether "pregnant woman" is an "accurate" description of the persons who potentially are subject to the measure's prohibition is a moral, philosophical, ethical, or biological question. Yet, by accepting the Attorney General's use of "pregnant woman" in the question and the explanation, the majority decides a legal question.[1]

Nor is the neutrality of the term "pregnant woman" as evident as the majority suggests. The current debate about abortion is as much a battle of words as it is a battle of ideologies. The Attorney General recognizes as much by asserting "that an important part of the strategy of both 'pro-life' and 'pro-choice' advocates is to define and redefine terms." To accept one term for the named person who potentially is subject to the measure's prohibition is to reject another term and all the belief system that goes with it. There are no neutral terms in this debate, which is why we should adhere to the deliberate language of the proponents of the measure.[2]

When the language in the measure is unambiguous, it is not the job of the Attorney General or of this court to

---

[1] The majority is not the first to wander inadvertently into this linguistic thicket. *Former* ORS 163.060, prior to its repeal in 1969 (*see* Oregon Laws 1969, chapter 684, section 17) provided:

> **"163.060 Abortion producing death of child or mother.** If any person administers to any woman pregnant with a child any medicine, drug or substance whatever, or uses or employs any instrument or other means, with intent thereby to destroy such child, unless the same is necessary to preserve the life of such mother, such person shall, in case the death of such child or mother is thereby produced, be deemed guilty of manslaughter."

[2] Had the Attorney General replaced "abortion" (the measure's language) with "termination of pregnancy" on the ground that the latter is accurate and neutral, would the majority likewise agree? I would hope not.

substitute their interpretation of the measure for the language of the measure itself. The term "mother" is "language taken directly from the proposed amendment itself. No paraphrase would serve as well because the term * * * would be the controlling constitutional language in case the measure were adopted." *ACLU v. Paulus,* 282 Or 539, 543, 580 P2d 168 (1978). However, in future litigation, a party undoubtedly will argue that the Attorney General's interpretation, with the majority's blessing, is the proper interpretation of the wording of the Constitutional Amendment. *See State v. Wagner,* 305 Or 115, 138-39, 752 P2d 1136 (1988), *vacated and rem'd for further consideration* 492 US ___, 109 S Ct 3235, 106 L Ed 2d 583 (1989) (the ballot title prepared by this court makes "crystal clear" the proper interpretation of a constitutional provision); *see also Rogers v. Lane County,* 307 Or 534, 539, 541-45, 771 P2d 254 (1989) (discussing the use of material in the official Voters' Pamphlet as an aid to construction). It will be difficult, if not impossible, for this court to retreat from today's interpretation regardless of the merits of any argument presented.

Absent a compelling argument by the Attorney General that the substituted term he has chosen will aid voter comprehension, the language in the proposed measure should be used. *See Glerum v. Roberts,* 308 Or 22, 27, 774 P2d 1093 (1989) ("[w]here, as here, the measure consistently refers to 'timber' rather than 'logs,' it is not permissible to reach beyond the unambiguous subject ('timber') chosen by the legislature and substitute a [different] word"). The measure says mother and the ballot title should say mother. This court, inadvertently I believe, has entered this important debate and taken sides. Whether the side taken is "right" or "wrong" is not the point: This court should not now be a party to the debate.

Van Hoomissen, J., joins in this dissenting opinion.