Argued and submitted April 4, ballot title certified as modified June 6, 1991

Robert EATON,
*Petitioner,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S37937)

813 P2d 37

Thane W. Tienson, of Copeland, Landye, Bennett & Wolf, Portland, argued the cause and filed the petition for petitioner.

Michael D. Reynolds, Assistant Solicitor General, Salem, waived appearance on behalf of respondent.

GRABER, J.

## GRABER, J.

In this original proceeding, petitioner challenges the ballot title for a proposed initiative measure.[1] We modify the ballot title and certify it as modified.

The Attorney General certified this ballot title to the Secretary of State:

"STATE MUST DETERMINE
SELECTIVE COMMERCIAL FISHING METHODS,
OPPOSE SOME GILLNETTING

"Question: Shall state fish department be required to determine methods for selective commercial fish harvesting, oppose some gillnetting, promote sport fishing?

"Summary: Act sets policy to harvest fish commercially by most selective means available, to return non-target fish unharmed. State to determine most selective commercial fish harvesting methods, oppose some Columbia River gillnetting. State to develop, implement plans to protect fish species most likely affected by commercial harvest. Plan goals are to achieve optimum recreational fishing; protect natural runs, genetic diversity of fish species. State may harvest, sell salmon if numbers exceed goals, use proceeds to carry out the Act. Allows private lawsuits to enforce Act."

Petitioner seeks a different ballot title,[2] ORS

---

[1] The Appendix contains the text of the proposed measure.

[2] Petitioner's proposed ballot title reads as follows:

"RESTRICTING COMMERCIAL FISHING;
ESTABLISHING SPORT FISHING PRIORITY.

*"Question:* Shall Oregon's commercial fishing laws be changed to further restrict commercial fishing and to establish a sport fishing priority?

*"Summary:* Changes Commercial Fishing Laws. Requires State to establish sport fishing priority. All commercial fishing to be done by most selective methods to allow release of all non-target fish unharmed and causing least interference with sport fishing. Directs State to perform investigation and research. Prohibits commercial fishing for spring chinook salmon. State authorized to sell surplus fish to highest bidder, use proceeds to carry out Act. Reduces General Fund revenues. Allows lawsuits against individuals and State to enforce laws."

250.085(2),[3] contending that the ballot title certified by the Attorney General does not substantially comply with the requirements of ORS 250.035. ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a)   A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b)   A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c)   A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

As petitioner notes, this court reviews ballot titles for "substantial compliance" with those requirements. ORS 250.085(4); *Reed v. Roberts,* 304 Or 649, 652, 748 P2d 542 (1988). We turn to a consideration of petitioner's arguments concerning the Caption, Question, and Summary.

## CAPTION

■        The Caption must "reasonably [identify] the subject of the measure." ORS 250.035(1)(a). Petitioner argues that the Caption fails reasonably to identify the subject of the measure, because it does not state that the subject of the measure is "to establish a sport fishing priority and to impose restrictions on the commercial gillnet fishery." According to petitioner, the laws governing commercial harvesting of fish presently protect natural runs of anadromous fish and require conservation.[4] That being so, he argues, the "primary aim" of the initiative is to eliminate consideration of economic and commercial, as distinct from recreational and

---

[3] ORS 250.085(2) provides:

"Any elector dissatisfied with a ballot title for an initiated or referred measure certified by the Attorney General and who timely submitted written comments on the draft ballot title may petition the Supreme Court seeking a different title. The petition shall state the reasons the title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035 and 250.039."

Petitioner met the requirements of that subsection.

[4] Petitioner cites ORS 496.012, 496.435, 496.440, 496.450(3), 506.109, 506.750, 506.755, 508.710, 508.715(2), 508.718, 508.720(2), and 509.031.

aesthetic, benefits in the management of Oregon's fish resources. He argues that the subject of the measure is, therefore, to restrict commercial fishing more than it is now and that the Caption fails to reveal that subject.

We agree with petitioner that the present Caption does not comply substantially with ORS 250.035(1)(a). On the subject of the state's goals for fish management, the present Caption says only that the state "must determine *selective* fishing methods" (emphasis added), whereas the measure would establish a policy "that the commercial harvest of fish be conducted by *the most selective means available* and in a manner that allows *all* nontarget fish to be returned to the water unharmed." Section 4(1) (emphasis added). Similarly, section 2 of the measure declares that the state must "take every means possible" to protect Columbia River salmon, steelhead, and sturgeon from nonselective commercial harvest, and section 4(2) provides that "[s]tocks of fish shall be selected that will allow for commercial harvest by the most selective methods." The single adjective, "selective," in the Caption does not capture fully the subject of the measure, which, on its face, is to require the state to seek "the most selective" means of commercial fishing.

Moreover, the present Caption says only that the state must "determine" certain methods of fishing, whereas the measure would establish a policy and would require the state to take actions to "carry out" that policy. Section 4(1). For example, section 4(1)(b) of the measure specifies that the Fish and Wildlife Commission "shall oppose to the extent of its authority and influence" certain gillnetting. Section 2 of the measure provides that "the commission shall develop and implement management plans" for the protection of certain fish. The verb "determine" in the Caption does not capture fully the subject of the measure, which, on its face, is to require the state to act in accordance with what it determines.

Petitioner does not question directly the inclusion of a reference to gillnetting in the Caption. As noted, section 4(1)(b) specifies that the Fish and Wildlife Commission "shall oppose to the extent of its authority and influence, the taking of fish by gillnet in the mainstem of the Columbia River from the mouth upriver to Bonneville Dam during the period beginning January 1 and ending August 31 of each calendar

year." Thus, gillnetting is one of the subjects of the measure. Petitioner's proposed deletion from the Caption of the reference to gillnetting appears to result from his argument that the subject of the measure is more generally to restrict commercial fishing and from the limitation on the number of words that may appear in a caption.

The measure's requirement that certain state officials oppose spring gillnetting in the mainstem of the Columbia River, section 4(1)(b), is a means to achieve the primary purpose of conducting commercial fishing "by the most selective means available and in a manner that allows all non-target fish to be returned to the water unharmed," section 4(1). We thus agree with petitioner's implicit argument that opposition to gillnetting is not the main subject of the measure. Restricting the commercial harvest of fish is the main subject of the measure; most of the significant provisions of the measure relate to that overall subject. Sections 2 (second paragraph), 4(1), 4(2), 4(4), and 5(1)(a).

The Attorney General's Caption does not substantially comply with ORS 250.035(1)(a), because it fails "reasonably [to identify] the subject of the measure." We substitute this Caption: RESTRICTS COMMERCIAL FISHING TO THE MOST SELECTIVE MEANS AVAILABLE.

## QUESTION

The Question must "plainly [phrase] the chief purpose of the measure." ORS 250.035(1)(b). Petitioner contends: "The chief purpose of this measure is actually two-fold: (1) to restrict commercial fishing; and (2) to establish a sport fishing priority in the state's commercial fishing laws." He further argues that "promoting" sport fishing inadequately describes the second of those chief purposes, because the measure "establishes a recreational angling priority in the state's commercial fishing laws *to the exclusion of commercial and economic benefits.*" (Emphasis in original.)

As discussed above, we agree that the restriction of commercial fishing is the central subject of the measure. We *must next consider, in response to petitioner's argument,* whether the establishment of a "sport fishing priority in the state's commercial fishing laws" also is part of the chief purpose of the measure.

Section 4(2) of the measure provides:

"In carrying out its duties the [Fish and Wildlife] [C]ommission shall develop and implement management plans for the protection of those species most likely to be affected by commercial harvest. To protect the natural runs and genetic diversity of those species *and to achieve optimum recreational angling* shall be the *principal goals* in the selection and management of all fish stocks released in the waters of this state and in determinations regarding the harvest of fish for commercial purposes. Stocks of fish shall be selected that will allow for commercial harvest by the most selective methods *while causing the least interference with recreational angling* and the spawning and rearing of natural fish runs." (Emphasis added.)

The measure, on its face, provides for achievement of "optimum recreational angling" as one of its "principal goals."

We also note that section 3 of the measure would place sections 4 and 5 in ORS chapter 506. ORS chapter 506, in its present form, relates *only* to commercial fishing. ORS chapter 496 relates to recreational angling. *See* ORS 506.031 (nothing in the wildlife laws affects the commercial fishing laws); ORS 496.016 (similar). Section 4 of the measure would place the goal of achieving optimum *recreational* angling in the *commercial* fishing laws. Accordingly, we agree with petitioner that the measure's chief purpose is to affect *both* commercial fishing policies *and* recreational angling.

With respect to the first aspect of the chief purpose, the present Question fails substantially to comply with the statutory requirements for the same reason that the present Caption does. Petitioner's alternative formulation — that the measure would *"further* restrict commercial fishing" in Oregon — calls for a premature analysis of the measure and its potential effect on existing law. (Emphasis added.) On the other hand, "selective" harvesting of fish, which is the description in the Attorney General's Question, is not the same as "the most selective means available," which is the much more restrictive phrase that the measure contains.

As to the second aspect of the chief purpose, the measure would require the state agency to have as a principal goal "to achieve optimum recreational angling," and the agency would be required to select stocks of fish that would,

among other things, allow "the least interference with recreational angling." Section 4(2). Petitioner's characterization of those provisions as a "sport fishing priority" may or may not be correct, but he does appropriately draw a distinction between "promoting" sport fishing and "achieving optimum" recreational angling. To "promote" means to further, contribute to, or advance. Webster's Third New International Dictionary 1815 (unabridged 1976). "Optimum" means the best or most favorable conditions. *Id.* at 1585. Those two concepts are different; the measure's purpose is much more focused than the Question discloses. Accordingly, the second vice of the present Question is that it understates significantly the second aspect of the chief purpose of the measure, as phrased in the measure itself.

The Attorney General's Question does not substantially comply with ORS 250.035(1)(b). We substitute this Question: Shall state law restrict commercial fishing to the most selective means available, to achieve optimum recreational angling?

## SUMMARY

The Summary must summarize "the measure and its major effect." ORS 250.035(1)(c). Petitioner objects to the inclusion of two phrases: "State to develop, implement plans to protect fish species most likely affected by commercial harvest," and "Plan goals are to * * * protect natural runs, genetic diversity of fish species." He reasons that state law presently requires such protection and that such plans have been in place "for years," so that the inclusion of the disputed phrases is "misleading."

A summary that restates existing law may fail substantially to comply with ORS 250.035(1)(c), if the summary fails to communicate adequately the "major effect" of the measure. The major effect of a measure is the way in which it proposes substantively to *change* existing law, not the way in which it proposes to re-enact existing law. On the other hand, it may be appropriate to include some provisions that overlap existing law, for example, to place a proposed change in context. In addition, a summary may comply substantially even if it restates existing law, if that restatement does not cause the summary as a whole to obscure the major effect of

the measure. Finally, it may not be apparent in a particular case that a proposed measure is in fact the same as existing law.

■      In this instance, the Summary is not defective for the reason that petitioner advances. First, the wording of the measure is not the same as the wording of any of the existing statutes that petitioner cites. It is not clear whether the requirements of the measure are in fact redundant. Petitioner concedes that the Summary accurately describes what the measure itself contains. Second, even if the portion to which petitioner objects does restate present requirements, the Summary as a whole substantially complies, because it communicates adequately the major effect of the measure. The portion to which petitioner objects makes up only about one-fourth of the middle of the Summary, and the remainder describes the effects that petitioner contends are the major ones.

The Summary certified by the Attorney General substantially complies with ORS 250.035(1)(c).

## CONCLUSION

Pursuant to ORS 250.085(4), we certify to the Secretary of State the following ballot title:

### RESTRICTS COMMERCIAL FISHING
### TO THE MOST SELECTIVE MEANS AVAILABLE

*Question:*   Shall state law restrict commercial fishing to the most selective means available, to achieve optimum recreational angling?

*Summary:*   Act sets policy to harvest fish commercially by most selective means available, to return nontarget fish unharmed. State to determine most selective commercial fish harvesting methods, oppose some Columbia River gill-netting. State to develop, implement plans to protect fish species most likely affected by commercial harvest. Plan goals are to achieve optimum recreational fishing; protect natural runs, genetic diversity of fish species. State may harvest, sell salmon if numbers exceed goals, use proceeds to carry out the Act. Allows private lawsuits to enforce Act.

Ballot title certified as modified.

## APPENDIX

The text of the proposed measure reads:

"SECTION 1.   This article shall be known as the Fish and Marine Life Conservation Act.

"SECTION 2.   The people of Oregon find and declare that the fish resources and marine life of the State of Oregon should be managed and conserved for the benefit of all people and for. fish resource and marine life diversity and abundance.

"Commercial nets are indiscriminate and destructive, entangle and kill thousands of nontarget salmon, steelhead and sturgeon as well as other marine life and are not acceptable for ocean or mainstem Columbia River use.

"To prevent Columbia River salmon, steelhead and sturgeon from being threatened and endangered demands that the State of Oregon move strongly and effectively and take every means possible to protect them from non-selective commercial harvest and restore our historic resources.

"SECTION 3.   Sections 4 and 5 of this Act are added to and made a part of ORS chapter 506.

"SECTION 4.   Notwithstanding any other provision of the wildlife laws or the commercial fishing laws:

"(1)   It is the policy of the State of Oregon that the commercial harvest of fish be conducted by the most selective means available and in a manner that allows all nontarget fish to be returned to the water unharmed. In carrying out this policy:

"(a)   The State Department of Fish and Wildlife shall conduct investigations and research to determine the most selective methods for commercial harvest of fish that will allow all nontarget fish to be returned to the water unharmed. The determinations made shall be reevaluated not later than December 31 of each odd-numbered year.

"(b)   The commission shall oppose to the extent of its authority and influence, the taking of fish by gillnet in the mainstem of the Columbia River from the mouth upriver to Bonneville Dam during the period beginning January 1 and ending August 31 of each calendar year.

"(2)   In carrying out its duties the commission shall develop and implement management plans for the protection of those species most likely to be affected by commercial harvest. To protect the natural runs and genetic diversity of

those species and to achieve optimum recreational angling shall be the principal goals in the selection and management of all fish stocks released in the waters of this state and in determinations regarding the harvest of fish for commercial purposes. Stocks of fish shall be selected that will allow for commercial harvest by the most selective methods while causing the least interference with recreational angling and the spawning and rearing of natural fish runs.

"(3)   All individuals who represent this state on any interstate or international board, commission or council that regulates management of the fish resource are directed to perform those representational duties in a manner consistent with this section of this 1992 Act, but not inconsistent with federal laws, treaties or court orders.

"(4)   Upon determination that significant numbers of salmon would exceed established escapement goals, the State Department of Fish and Wildlife may establish and cause to be operated selective salmon harvesting facilities. Salmon so harvested shall be sold to the highest bidder and the proceeds therefrom shall be paid into the State Wildlife Fund and is continuously appropriated to carry out the provisions of this act.

"SECTION 5.   (1) Any person may commence to (*sic*) civil action:

"(a)   Against any other person to prohibit the commercial taking of salmon at times and places when such taking is prohibited by section 4 of this 1992 Act.

"(b)   Against the commission of the State Department of Fish and Wildlife to compel the performance of any duty prescribed in section 4 of this 1992 Act that is not discretionary.

"(2)   If the plaintiff prevails in any action referred to in this section, the court shall award reasonable attorney fees incurred in bringing the action and on any appeal of the judgment.

"SECTION 6.   (1) Paragraph (b) subsection (1) of section 4 of this Act first becomes operative January 1, 1994.

"(2)   The first investigation and research by the State Department of Fish and Wildlife required by paragraph (a) of subsection (1) of section 4 of this Act must be completed by December 31, 1993."