Baker and Allen petition submitted October 7, Gernant and Remington petition was argued and submitted October 8, ballot title certified as modified December 12, 1991

John E. BAKER
and David K. Allen,
*Petitioners,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38512)

David GERNANT
and Stevie Remington,
*Petitioners,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38511)
(Cases Consolidated for Opinion)
822 P2d 1162

John S. Ransom, of Ransom, Blackman & Weil, Portland, filed the petition for petitioners John E. Baker and David K. Allen.

Charles F. Hinkle, Portland, argued the cause and filed the petition for petitioners David Gernant and Stevie Remington.

No appearance contra.

FADELEY, J.

## FADELEY, J.

In these cases, which we consolidate for purposes of decision, two separate petitions challenge a certified ballot title for an initiative measure amending the Oregon Constitution. Each petition raises the issue whether the caption, question, and summary are sufficient to perform the office assigned to them by statute.

The challenged ballot title provides:

"AMENDS CONSTITUTION:
GOVERNMENT MAY NOT PROMOTE
HOMOSEXUALITY, OTHER LISTED 'BEHAVIORS'

"QUESTION: Shall Oregon's constitution forbid government promotion of homosexuality, other listed 'behaviors', or recognizing such conduct through 'sexual orientation' label, quotas?

"SUMMARY: Amends Oregon Constitution. Governments in Oregon may not use funds or facilities to promote, encourage or facilitate homosexuality, pedophilia, sadism, or masochism. State may not recognize or protect this conduct under 'sexual orientation' or 'sexual preference' labels, or through quotas, minority status, affirmative action or similar concepts. All levels of government, including the state Department of Higher Education and public schools, must assist in setting a standard for Oregon's youth which recognizes that these 'behaviors' are 'abnormal, wrong, unnatural and perverse.' "

The text of the initiative measure provides:

"PARAGRAPH 1. The Constitution of the State of Oregon is amended by creating a new section to be added to and made a part of Article I and to read:

"SECTION 41 (1) This state shall not recognize any categorical provision such as 'sexual orientation,' 'sexual preference,' and similar phrases that includes homosexuality, pedophilia, sadism or masochism. Quotas, minority status, affirmative action, or any similar concepts, shall not apply to these forms of conduct, nor shall government promote these behaviors.

"(2) State, regional and local governments and their properties and monies shall not be used to promote, encourage, or facilitate homosexuality, pedophilia, sadism or masochism.

"(3) State, regional and local governments and their departments, agencies and other entities, including specifically the State Department of Higher Education and the public schools, shall assist in setting a standard for Oregon's youth that recognizes homosexuality, pedophilia, sadism and masochism as abnormal, wrong, unnatural, and perverse and that these behaviors are to be discouraged and avoided.

"(4) It shall be considered that it is the intent of the people in enacting this section that if any part thereof is held unconstitutional, the remaining parts shall be held in force."

The statute describing requirements for a proper ballot title, ORS 250.035(1), provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

■ Our review is limited to determining whether the proposed ballot title substantially complies with each of the three parts of ORS 250.035(1) and is further limited by the requirement that any deficiency in the title claimed in a petition before us must also have been raised, at least in a general way, before the Secretary of State so that the drafter of the ballot title to be certified was placed on notice of the perceived need for correction within that general area. *See* ORS 250.085(2) (elector who timely submits written comments to Secretary of State on draft ballot title may petition this court seeking different title); *Brown v. Roberts*, 309 Or 667, 669, 791 P2d 488 (1990) (only elector may petition); *Hand v. Roberts*, 309 Or 430, 433, 788 P2d 446 (1990) (standing to seek review arises only from written comment that criticizes draft ballot title for lack of substantial compliance with statutory standard).

In our review of a ballot title, it is not our function to construe the meaning of the words of the measure with finality before the history of its enactment is known. That

history includes the electoral debate about it and the Voters' Pamphlet arguments for and against it. At this point, the initiative constitutional amendment is the sponsors' measure, not an act of the people. Advance construction of meaning on our part would be unwise and perhaps unduly limiting. *See, e.g., Kane v. Roberts*, 310 Or 423, 799 P2d 639 (1990) (it is neither possible nor appropriate for court to predict effects of constitutional provision guaranteeing right to privacy); *Oregon Citizen's Alliance v. Roberts*, 308 Or 599, 783 P2d 1001 (1989) (under earlier statute, it was inappropriate to place potential, speculative secondary effects in Explanation). For that reason, we confine ourselves as much as possible to the words actually employed in the text of a measure to answer the question whether a challenged ballot title substantially reflects the subject, purpose, and major effect of the measure.

Finally, the applicable statute strictly limits the number of words that may be used in each of the three parts of a ballot title. ORS 250.035(1). Therefore, those word limitations must also play a part in our review.

A discussion of the text of the proposed constitutional amendment, quoted *ante*, will facilitate application of the statutory criteria to the certified ballot title. The substantive portion of the measure is set up in three parts that speak to three differing aspects of regulating governmental activity. The measure makes clear that the three parts of its text are considered to be separate and independent by providing that "if any part * * * is held unconstitutional, the remaining parts shall be held in force." Government is specified to include "state, regional and local governments," that is, all levels of government within the state. The text speaks of "government" in two of the three substantive parts of the measure. The third part refers simply to "this state." The text both (1) prohibits certain activity by government, and (2) requires certain conduct by government.

■ *Prohibitory Section.* The prohibition embodied in the measure has three operative verbs. No level of government shall use either its property or its money "to promote, encourage, or facilitate" certain sexual conduct.[1] Word limitations prevent use in the ballot title of all the verbs

---

[1] The measure describes the sexual activities that are its target both as

employed by the measure. One or another of the verbs should be used.

The choice is not difficult. The verb "facilitate" imports a broader scope of prohibition than do the other two verbs. To "promote" would "facilitate"; to "encourage" would "facilitate"; and "promote" and "encourage" may, under some circumstances, be synonymous. However, "facilitate" may include the more neutral connotation of simply doing an unrelated act which incidentally makes a result possible, even though doing the act does not cause the result. Thus, to "facilitate" may include, in a given circumstance, governmental action that, in and of itself, neither promotes nor encourages. *See Eaton v. Keisling*, 311 Or 415, 422, 813 P2d 37 (1991) (to "promote" means to further, contribute to, or advance).

Faced with the statutory limitation on the number of words that may be used and a proposed measure employing multiple but not synonymous verbs, the drafter of information that is designed to inform the voter completely normally will use the verb from the measure's text that is broadest in scope or the most far reaching. As to the prohibitory aspect of this measure, that verb is "facilitate."

Additionally, the measure assumes that there are certain ways in which a state might facilitate, or even promote and encourage, the various forms of sexual conduct that are the object of the measure's prohibitions. To counter those assumed ways of facilitating or promoting the listed sexual conducts, the measure prohibits the state from recognizing "any categorical provision such as 'sexual orientation,' 'sexual preference,' and similar phrases." The measure also counters use of "[q]uotas, minority status, affirmative action, or any similar concepts" to assist adherents of the sexual practices which the measure decries by declaring that the quotas and other concepts "shall not apply to" the forms of sexual conduct that are the object of the measure. The broad prohibition that state government may not "facilitate" the forms of sexual conduct includes within it a prohibition

---

"behaviors" and as "forms of conduct." The word "conduct" appears first in the measure, but "behaviors" appears twice.

against establishing categories or statutes that might facilitate or promote those forms of conduct. However, section (1) of the measure also uses the verb "recognize" when it prohibits state government from establishing categories or statutes related to the forms of sexual conduct that are the measure's object.

■ *Required Conduct Section.* The conduct required of government is spelled out in subsection (3) of the initiative. That section applies, as we have noted, to all levels of government within the state and to their departments. The required conduct is to "assist in setting a standard for Oregon's youth that recognizes homosexuality, pedophilia, sadism and masochism as abnormal, wrong, unnatural, and perverse and that these behaviors are to be discouraged and avoided." As can be seen, the conduct required of government is in two parts. The government shall assist in setting a standard for Oregon's youth that recognizes "these behaviors" as abnormal, wrong, unnatural, and perverse, and the government shall assist in setting a standard "for Oregon's youth" such as will show that the behaviors "are to be discouraged."

## THE CAPTION

■ One petition for review of the ballot title challenges the caption on the ground that it refers only to the prohibition against government acts favoring the types of activity named in the measure, but does not disclose the requirement to discourage the conduct covered by the measure. Petitioners point out that ORS 250.035(1)(a) requires that the caption must reasonably identify the subject of the measure.[2] Our prior cases recognize that a measure may have more than one subject or main major purpose. *See, e.g., Eaton v. Keisling, supra,* 311 Or at 419-22 (so holding).

■ We agree that the use of only the verb "promote" in the caption fails to identify the subject of the measure, because the measure goes beyond proscribing promotion to proscribe any facilitation by any level of government, and because the measure requires all levels of government to

_____

[2] Petitioners, specifically identifying themselves as Oregon electors, also wrote to the Secretary of State through their lawyer, criticizing the proposed draft ballot title in this matter for lack of substantial compliance with the statutes related to ballot titles that are quoted in the text of this opinion, *post.*

assist in setting a standard for youth that discourages the types of sexual activity named in the measure. The certified caption is so narrowly phrased as to cause the voter, for whose use the caption is intended, to be inaccurately informed about the scope and coverage of the measure. We are driven by the 10-word limit to synthesize as closely as possible what is provided by the three different parts of the measure.

Accordingly, we certify the following caption:

AMENDS CONSTITUTION:
GOVERNMENT CANNOT FACILITATE,
MUST DISCOURAGE HOMOSEXUALITY,
OTHER "BEHAVIORS."

## THE QUESTION

■      One petition also challenges the adequacy of the question certified to the Secretary of State. The statute requires the question to state "the chief purpose of the measure." This court has held that the question should reflect the significant aim or end which a measure is designed to bring about. *Reed v. Roberts*, 304 Or 649, 748 P2d 542 (1988). ORS 250.035(1)(b) requires that the question plainly phrase "the chief purpose of a measure so that an affirmative response corresponds to an affirmative vote on the measure." The question certified to the Secretary of State covers only the prohibitions of sections (1) and (2) and not the additional requirements placed on government by section (3) of the measure. Where, as here, a measure both prohibits an activity and also imposes other requirements on government, two chief purposes may and should be recognized. *See Eaton v. Keisling*, *supra*, 311 Or at 421-22 (recognizing two chief purposes and rewording a ballot question to reflect both). Again, we are required to synthesize the varying aspects of the measure into a 20-word question to be answered "yes" or "no" by each voter. To be of most help to the voter, the question should build on, and be consistent with, the caption.

We certify for the voters' use the following question:

QUESTION:  Shall constitution be amended to require that all governments discourage homosexuality, other listed "behaviors," and not facilitate or recognize them?

## THE SUMMARY

One of the petitions challenges the summary on the ground that it does not define the verbs used in the measure. The measure presently before us contains no special definitions.[3] To insert any definitions in the summary would be to add meaning to the measure that the sponsors may or may not have intended. We decline to do that.

Petitioners also contend that the summary does not disclose some major effects of the measure. We agree. Some changes are needed in the summary, consonant with the changes to the caption and question. *See Aughenbaugh v. Roberts*, 309 Or 510, 517, 789 P2d 656 (1990) (interplay of the three parts of a ballot title may require examination of caption and question where a challenge to the summary may produce a change therein). The certified summary does not disclose to the voter the requirements imposed on all levels of government to assist in setting a standard for Oregon's youth to recognize as wrong and to discourage the sexual "behaviors" listed in the measure. Those requirements are clearly stated in the measure in section (3), albeit in general terms. The certified summary makes no reference to the requirement that the listed behaviors "are to be discouraged." Accordingly, the summary is altered to include a reference to that major effect of the measure.

Additionally, the certified summary reads: "State may not recognize *or protect* this conduct." (Emphasis added.) "Protect" is not a word found in the measure. No reference to state protection of persons involved in the listed conduct is contained in the measure. The addition of the thought that all forms of *protection* are removed by the measure appears to be a conclusion of the drafter of the certified summary about what one possible effect of the measure might be. Therefore, the conclusionary words "or

---

[3] A discussion of a prior version of the measure, containing definitions of terms used, is in *Baker v. Keisling*, 312 Or 8, 815 P2d 698 (1991).

The dissent chides the court for not including the word "listed" in the 10-word caption but does not point out what verb, taken from the words of the measure, should be dropped to make room for the word "listed," not found in the measure. Nor does the dissent note that the "listed" reference would refer to some sexual conducts already proscribed and punished by existing criminal statutes, such as ORS 163.405, 163.427. Finally, unlike the prior insufficient caption which did not have any example in it, this one contains a specific reference point, namely "homosexual."

protect" must be deleted, leaving in place the description of the effects announced by the measure's language. This change serves the rule that we do not predict or speculate about potential applied interpretations of a measure before the history of its adoption is complete. *See Kane v. Roberts, supra; Oregon Citizens Alliance v. Roberts, supra.*

Another petition for review of the ballot title urges that the purpose and effect of the measure — both in its prohibitory aspect and in its aspect imposing requirements on government — is to require governmental discrimination against persons who may fall within the terms of the initiative. Those petitioners extend that argument to include the proposition that the measure would indirectly repeal the protections provided by Article I, section 20,[4] of the Oregon Constitution, insofar as it relates to the subject of the initiative measure. Specifically, those petitioners assert that "the proposed amendment would eliminate the existing state constitutional guarantee of freedom from governmental discrimination on the basis of sexual orientation."

The words of the measure make no reference to Article I, section 20. Petitioners do not cite any case expressly holding that there is (or is not) such an applicable guarantee. To evaluate their argument would require this court to hold that Article I, section 20, is impacted. We decline to engage in an abstract exercise to interpret a separate section of the state constitution in order to evaluate whether the measure before us for ballot title review, or legislation that might be adopted in the future to implement it, would adversely impact that separate constitutional provision. *See Kane v. Roberts, supra; Oregon Citizen's Alliance v. Roberts, supra.*

## CONCLUSION

The following ballot title is certified for use with the initiative measure:

CAPTION: Amends Constitution: Government cannot facilitate, must discourage homosexuality, other "behaviors."

---

[4] Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

QUESTION: Shall constitution be amended to require that all governments discourage homosexuality, other listed "behaviors," and not facilitate or recognize them?

SUMMARY: Amends Oregon Constitution. All governments in Oregon may not use their monies or properties to promote, encourage or facilitate homosexuality, pedophilia, sadism, or masochism. All levels of government, including public education systems, must assist in setting a standard for Oregon's youth which recognizes that these "behaviors" are "abnormal, wrong, unnatural and perverse" and that they are to be discouraged and avoided. State may not recognize this conduct under "sexual orientation" or "sexual preference" labels, or through "quotas, minority status, affirmative action, or similar concepts."

Ballot title certified as modified.

**VAN HOOMISSEN, J.,** dissenting.

In my view, the certified ballot title substantially complies with the requirements of ORS 250.035[1] and, therefore, I would approve it. ORS 250.085(4).[2]

Even if we do not believe that a certified ballot title is the best of all possible ballot titles, this court must approve a certified ballot title that substantially complies with the statutory standards. *Ransom v. Roberts*, 309 Or 654, 659, 791 P2d 489 (1990). We are not empowered to change a certified ballot title merely because we are of the opinion that we can write a "better" one. *Priestley v. Paulus*, 287 Or 141, 145, 597 P2d 829 (1979); *Allison v. Paulus*, 280 Or 197, 199, 570 P2d 368 (1977).

---

[1] ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

[2] ORS 250.085(4) provides:

"The court shall review the title for substantial compliance with the requirements of ORS 250.035 and 250.039, and shall certify a title meeting this standard to the Secretary of State."

Petitioners make no challenge under ORS 250.039 (readability test).

The initiative measure here contains three subsections, plus a severability clause. Subsection (1) provides:

> "This state shall not *recognize* any categorical provision such as 'sexual orientation,' 'sexual preference,' and similar phrases that includes homosexuality, pedophilia, sadism or masochism. Quotas, minority status, affirmative action, or any similar concepts, shall not apply to these forms of conduct, *nor* shall government *promote* these behaviors." (Emphasis added.)

Subsection (2) provides:

> "State, regional and local *governments and their properties and monies shall not be used to promote*, encourage, or facilitate homosexuality, pedophilia, sadism or masochism." (Emphasis added.)

Thus, subsections (1) and (2) provide that Oregon shall not "recognize," or "promote" the listed "behaviors," and that governments and their "properties or monies" shall not be used to promote those "behaviors." Subsection (3) provides:

> "State, regional and local *governments* and their departments, agencies and other entities, including specifically the State Department of Higher Education and the public schools, *shall assist in setting a standard for Oregon's youth* that recognizes homosexuality, pedophilia, sadism and masochism as abnormal, wrong, unnatural, and perverse and that these behaviors are to be discouraged and avoided." (Emphasis added.)

Thus, all levels of Oregon government shall assist in setting a "standard for Oregon's youth" that recognizes that the listed "behaviors" are "abnormal, wrong, unnatural, and perverse" and are "to be discouraged and avoided."

With that text in mind, I proceed to examine whether the certified ballot title here substantially complies with the requirements of ORS 250.035.

### The Caption

The first question is: Does the certified ballot title's Caption "reasonably identif[y] the subject of the measure"? ORS 250.035(1)(a).

The certified ballot title's Caption reads:

"AMENDS CONSTITUTION:
GOVERNMENT MAY NOT PROMOTE
HOMOSEXUALITY, OTHER LISTED 'BEHAVIORS' "

The modified ballot title's Caption reads:

"AMENDS CONSTITUTION:
GOVERNMENT CANNOT FACILITATE,
MUST DISCOURAGE HOMOSEXUALITY,
OTHER 'BEHAVIORS' "

Is there really a sufficient difference between the two Captions to mandate a change in the wording? Stated differently, does the modified Caption do more to "reasonably identif[y] the subject of the measure"?[3] I think not.

The majority changes "may not" to "cannot" (and, thus, saves a word) and changes "promote" to "facilitate." I suggest that that is nothing more than another way of saying essentially the same thing. It is a distinction without a difference.

The majority adds "must discourage." The text of the measure, however, does not require the government affirmatively to "discourage" anything. It requires the government to assist is setting a "standard for Oregon's youth." It is that "standard" that must recognize that the listed "behaviors" are to be "discouraged."[4] Moreover, the

---

[3] The statute limiting a Caption to 10 words makes it very difficult to accurately and completely identify the measure's subject. A "better" Caption might be, "Amends Constitution: Government Cannot Recognize, Promote Homosexuality, Other Listed Behaviors." The certified ballot title's Caption is acceptable, however, because it "reasonably identifies the subject of the measure." ORS 250.035(1)(a).

[4] I fear that the majority's conclusion that there is an affirmative duty to discourage homosexuality and the other listed "behaviors," in addition to not being faithful to the text of the measure, also amounts to a premature interpretation of the measure on a critical point. This court's initial interpretation of the apparent meaning of the words of the measure, *vis-a-vis* the ballot title, will become a part of the "legislative" history of the measure and that apparent meaning of the terms of the measure would be one of our primary guides for discerning the intent of the measure, if enacted, in a substantive case. *See Seymour v. Dept. of Rev.*, 311 Or 254, 258-59, 809 P2d 100 (1991) (looking to ballot title and Voter's Pamphlet to interpret a ballot measure); *see also State ex rel Chapman v. Appling*, 220 Or 41, 68, 348 P2d 759 (1960) ("This court has recognized in a number of cases that arguments in the official Voter's Pamphlet relative to measures submitted to the people may be resorted to as an aid to construction."). Suffice it to say that the end result of a measure's erroneous ballot title is a potentially erroneous result in a future case involving the interpretation of that measure.

majority's modifications do not respond to petitioners' complaints about the certified Caption.[5]

More importantly, by deleting the word "listed" from the certified ballot title's Caption, the majority has made the modified Caption so general as to be meaningless. As modified, the Caption tells the voters that the government "cannot facilitate" and that it "must discourage * * * other 'behaviors.'" The words "other 'behaviors'" could refer to driving while intoxicated, smoking cigarettes, or owning a "pit bull" terrier, for all the modified Caption communicates. *See Baker v. Keisling*, 312 Or 8, 12, 815 P2d 698 (1991) (rejecting a certified ballot title's Caption in an earlier version of this same initiative concept, because the Caption failed to reasonably identify the subject of the measure). In modifying the certified Caption, the majority is doing the very thing that this court condemned just a few months ago in *Baker v. Keisling, supra.* In that case, this court modified a certified ballot title Caption by *adding* the word "listed," so as to more reasonably identify that the relevant "behaviors" were the "behaviors" listed in the measure's text. In this case, the majority modifies the certified ballot title's Caption by *deleting* the word "listed." Apparently, as Emerson observed, foolish consistency is the hobgoblin of little minds.

The certified ballot title's Caption reasonably identifies the subject of the measure and, therefore, substantially complies with the requirements of ORS 250.035(1)(a).

## The Question

The second question is: Does the certified ballot title's Question "plainly [phrase] the chief purpose of the measure"? ORS 250.035(1)(b).

---

[5] Petitioners complain that the subject of the measure is "the elimination of an existing fundamental constitutional right: the right to be free from governmental discrimination based on sexual orientation," and that "governments must not use their resources, legislative, judicial and/or executive, to lessen the burdens imposed on homosexuals."

The certified ballot title's Question reads:

"Shall Oregon's constitution *forbid government promotion* of homosexuality, other listed 'behaviors,' *or recognizing* such conduct through 'sexual orientation' label, quotas?" (Emphasis added.)

The modified ballot title's Question reads:

"Shall constitution be amended to require that all governments *discourage* homosexuality, other listed 'behaviors,' and *not facilitate or recognize* them?" (Emphasis added.)

The difference between the Questions appears to be one of emphasis. The certified Question asks whether the constitution should forbid government "promotion" or "recognizing." The modified Question asks whether the constitution should require government to "discourage," "not facilitate or recognize." By its emphasis on what the measure explicitly forbids, rather than on the secondary effects that might follow, the certified Question more plainly, and I submit, more accurately, phrases the measure's chief purpose. Moreover, the language of the certified Question is truer to the measure's text than the modified Question.

Subsection (1) of the measure forbids the state from recognizing "any categorical provision," *etc.* The potential secondary effect of forbidding promotion or recognition may be to discourage and not facilitate or recognize the listed "behaviors." The explicit focus of the subsection, however, is on forbidding the government from promoting or recognizing something, not on requiring the government to discourage or "not facilitate" or recognize anything. The modified Question, therefore, impermissibly turns the measure's focus, as expressed in its text, on its head.

Furthermore, because it also speaks to the additional issues of "label(s)" and "quotas," the certified Question provides *more* information about the measure than does the modified Question. To that extent, it more "plainly phrases" the measure's chief purpose.

The certified ballot title's Question "plainly phrases the chief purpose of the measure" and, therefore, it substantially complies with the requirements of ORS 250.035(1)(b).

## *The Summary*

The third question is: Does the certified ballot title's Summary contain a concise and impartial statement summarizing the measure and its major effect"? ORS 250.035(1)(c).

The certified ballot title's Summary reads:

"Amends Oregon Constitution. Governments in Oregon may not use funds or facilities to promote, encourage or facilitate homosexuality, pedophilia, sadism, or masochism. State may not recognize or protect this conduct under 'sexual orientation' or 'sexual preference' labels, or through quotas, minority status, affirmative action or similar concepts. All levels of government, including the state Department of Higher Education and public schools, must assist in setting a standard for Oregon's youth which recognizes that these 'behaviors' are 'abnormal, wrong, unnatural and perverse.' "

The modified ballot title's Summary reads:

"Amends Oregon Constitution. All governments in Oregon may not use their monies or properties to promote, encourage or facilitate homosexuality, pedophilia, sadism, or masochism. All levels of government, including public education systems, must assist in setting a standard for Oregon's youth which recognizes that these 'behaviors' are 'abnormal, wrong, unnatural and perverse' and that they are to be discouraged and avoided. State may not recognize this conduct under 'sexual orientation' or 'sexual preference' labels, or through 'quotas, minority status, affirmative action, or similar concepts.' "

Each Summary contains four sentences. In each Summary, the first sentence is the same.

The only difference between the second sentences is that the modified Summary adds the essentially surplus word "all," and substitutes the essentially synonymous words "monies and properties" for the words "funds or facilities." So far, I suggest that there is little difference.

The order of the third and fourth sentences is reversed in the modified Summary. The majority opinion fails to disclose *why* this reversal is appropriate. The two sentences address different concerns of the sponsors. I suggest that the sponsors' priorities as reflected in the text of their initiative

petition should be respected in the absence of a clear explanation as to why that is not being done.

The modified Summary *deletes* the words "or protect" from the third sentence of the certified Summary. I do not find that petitioners objected to the use of the words "or protect" in the certified Summary.[6]

Finally, the modified Summary changes "including the state Department of Higher Education and public schools" to "including public education systems," and adds that the listed " 'behaviors' " are to be "discouraged and avoided." In my view, these changes are entirely cosmetic and, thus, unwarranted.

The certified ballot title Summary is a concise and impartial statement summarizing the measure and its major effect and, therefore, it substantially complies with the requirements of ORS 250.035(1)(c).

The majority opinion's modified ballot title is different, and some even may read it as being "better." This court, however, is not empowered to review a challenged ballot title that sufficiently does its job to see if we can write a better one. Because the certified ballot title substantially complies with the requirements of ORS 250.035, I would approve it.

Peterson and Unis, JJ., join in this dissent.

---

[6] Petitioner Gernant complains that the "major effect" of the measure is "the removal of existing constitutional barriers to governmental discrimination based on sexual orientation." Petitioner Baker complains that the certified Summary uses words like "promote," "facilitate," and "encourage," without explaining what those words mean and that, therefore, the Summary "fails to advise an impartial reader of the significance of those words."