Argued and submitted March 13, ballot title certified as modified March 27, 1990

BAUMAN et al,
*Petitioners,*

*v.*

ROBERTS,
*Respondent,*

MANNIX et al,
*Intervenors.*

(SC S36931)

REMINGTON et al,
*Petitioners,*

*v.*

ROBERTS,
*Respondent,*

MANNIX et al,
*Intervenors.*

(SC S36932)
(Cases Consolidated for Argument and Opinion)
789 P2d 258

Sandra J. Childs, Portland, argued the cause for petitioners Judy Bauman and Beverly Stein. With her on the petition were B. Carlton Grew, Margaret S. Olney, Katherine Brown, and John S. Bishop, Lawyers for Choice, Portland.

Pamela L. Jacklin, Portland, argued the cause for petitioners Stevie Remington, Teri Kaliher and Allie Stickney. With her on the petition was Charles F. Hinkle, Portland.

Warren C. Deras, Portland, filed memoranda and argued the cause for intervenors.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memoranda were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, Carson, Presiding Justice, and Jones, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

CARSON, J.

## CARSON, J.

This original proceeding consolidates two challenges to a ballot title certified by the Attorney General to the Secretary of State. The ballot title is for a measure which generally would require a physician to notify the parents of a pregnant minor prior to performing an abortion on the minor. The Attorney General certified the following ballot title, pursuant to ORS 250.067(2):

### "DOCTOR MUST GIVE PARENT NOTICE BEFORE MINOR'S ABORTION

"*QUESTION:* Shall state law require doctor to give notice to parent or custodian at least two days before minor's abortion?

"[*SUMMARY*]: Doctor must give notice at least two days before minor's abortion. Notice goes to parent picked by minor or parent with custody. If no parent, notice goes to adult or agency caring for minor. Doctor may delay notice if minor may die or suffer physical harm. Notice excused if minor is victim of reported abuse at home or rape which caused pregnancy. Minor and parents may sue doctor for breaking law. Doctors can not insure against this lawsuit. Doctor also may lose license."

Petitioners, as required by ORS 250.067(1), timely submitted comments to the Secretary of State on the Attorney General's draft ballot title. Petitioners now ask this court to review the certified ballot title. ORS 250.085(2).

ORS 250.035 sets forth the requirements for the form of ballot titles. These requirements may be summarized as follows: The ballot title must contain (1) a caption of not more than 10 words which "reasonably identifies the subject of the measure"; (2) a question of not more than 20 words which "plainly phrases the chief purpose of the measure"; and (3) a "concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

Before addressing the issues raised by petitioners, we emphasize our scope of review. Notwithstanding parties' attempts to persuade us to do otherwise, our sole function in reviewing a ballot title is to determine whether the Attorney General's certified ballot title *substantially complies* with the requirements set forth above. ORS 250.085(1). Recognizing that "there is more than one way to skin a ballot title," *June v.*

*Roberts,* 307 Or 270, 274, 767 P2d 70 (1988), we thus will certify the Attorney General's ballot title even if we do not believe it to be the best of all possible ballot titles, as long as it substantially complies with the statutory requirements.

Petitioners raise at least a dozen objections to various aspects of the ballot title, arguing in each case that the alleged defect prevents the ballot title from substantially complying with the statutory requirements. Many, if not most, of these objections stem from petitioners' perception of the chief proponents' motivation in drafting the measure. As discussed below, that focus is inappropriate. We address each aspect of the ballot title separately.

## THE CAPTION

■ Petitioners Bauman and Stein argue that the Caption should "state that the proposed law would curtail the existing right of minors to consent to abortion procedures without parental notice." Petitioners Remington, Kaliher, and Stickney argue that the Caption should "make it clear that the measure would *prohibit* a doctor from performing an abortion on a minor unless her parent is notified in the manner set forth in the measure prior to the event." (Emphasis in original.) Neither of these arguments is persuasive. The Caption requires only *identification* of the subject matter of the measure; it should not be, as the Attorney General points out, a vehicle for conclusions about how a measure may affect legal rights and duties. The Attorney General's Caption substantially complies with the statutory requirements.

## THE QUESTION

■ Most of petitioners' challenges to the Question stem from their perception of the measure's chief proponents' motivation in drafting the proposed measure. Petitioners Bauman and Stein argue that the chief purpose of the measure is to "prohibit minors from obtaining abortions." Focusing partly on the sanctions in the measure, petitioners Remington, Kaliher, and Stickney argue that "proponents' chief purpose is to discourage doctors from performing abortions." These arguments, however, confuse the motivation of the proponents with the chief purpose of the measure.

The chief purpose of the measure is to be determined, in the first instance, from the unambiguous language of the

measure. *Reed v. Roberts,* 304 Or 649, 654, 748 P2d 542 (1988). This measure is a notice measure. To this end, the measure includes definitions, notice provisions, descriptions of who must receive notice, descriptions of the notice to be given, exceptions, remedies, and enforcement provisions. It is the chief purpose of *the measure*—not the perceived motivation of the proponents—that the Question must reflect.

The Attorney General's Question plainly phrases the chief purpose of the measure, correctly avoiding discussion of the measure's sanctions (which are not its chief purpose) and the proponents' motivation (which is irrelevant). Having examined and rejected petitioners' general and specific objections, we conclude that the Question certified by the Attorney General substantially complies with the statutory requirements.

## THE SUMMARY

Many of petitioners' challenges to the Summary follow from their interpretation of the proposed measure as an anti-abortion provision. Thus, for example, petitioners Bauman and Stein argue that the Summary should "state that the essential purpose of this law is to prohibit the delivery of abortions to minors." While the measure—if enacted—might reduce the incidence of abortions performed on minors, the *major effect* of the measure would be to impose on doctors a duty to give notice. Speculation about potential secondary effects has no place in any part of the ballot title. *Oregon Citizen's Alliance v. Roberts,* 308 Or 599, 605, 783 P2d 1001 (1989).

Petitioners challenge the Attorney General's description of when notice must be provided, arguing that the language "[d]octor must give notice at least two days before minor's abortion" is insufficient. Similar arguments recently were raised and rejected in virtually this same context. We need not repeat that analysis here. *See Sampson v. Roberts,* 309 Or 335, 338 n 2, 788 P2d 421 (1990).

Petitioners Bauman and Stein argue that the Summary "inaccurately summarizes how the recipient of notice is selected." However, we agree with the Attorney General that the Summary accurately advises the public that the minor

may choose the parent to receive notice, but that others may have to be notified under some circumstances.

■ We next address petitioners' complaint that the Summary's description of the exceptions to the notice requirement does not substantially comply with the statute. The measure includes four exceptions to the notice requirement. No notice is required if:

(1) The doctor determines that the abortion is "necessary to protect the minor from death or other major physical harm which would be caused by an unusual abnormal physical condition related to her pregnancy, and that the delay necessary to give notice would significantly increase the risk of such death or harm";

(2) The pregnancy is the result of a rape which has been reported (or which the doctor then reports) to officials as required by law;

(3) The minor provides a written statement to the doctor that she has been subject to physical injury, sexual abuse, or sexual exploitation in the home which the doctor then reports to officials as required by law; or

(4) The minor is emancipated.

We agree with petitioners Bauman and Stein that the Attorney General's description of the circumstances under which the doctor may delay notice under (1) above is too broad. Such delay is authorized only if the doctor reasonably believes that death or major physical harm will occur if the abortion is delayed. This is a significantly more narrow exception than the Attorney General's Summary suggests. Accordingly, the Summary must include the following language: "Doctor may delay notice if doctor believes minor will die or suffer major physical harm."

■ Petitioners Bauman and Stein take issue with the Summary's language that notice is excused if the minor is a victim of "reported abuse at home or rape which caused pregnancy," arguing that it does not sufficiently notify voters that notice is excused only in cases of *reported* rape. We agree. The following language, which removes the ambiguity, must be included in the Summary: "Notice excused if minor is victim of reported abuse at home or reported rape causing pregnancy."

Petitioners' next concern is that the Summary does not adequately describe the remedies provided in the measure. Section 4 of the proposed measure provides for a civil action by the minor or parent of the minor against the doctor who violates the notice requirements of the measure. The measure provides that upon prevailing, the plaintiff may recover (1) special and general damages (including damages for emotional distress), or $1,000, whichever is greater; (2) punitive damages, if the violation was wilful; and (3) reasonable attorney fees and costs. The measure also provides that "[n]o insurer in this state shall insure against any liability arising under this section."

■　　　　Petitioners Remington, Kaliher, and Stickney contend that the statement that "[m]inor and parent can sue doctor for breaking law" is misleading. Both sets of petitioners suggest that it is the failure to give adequate notice that subjects a doctor to liability. We agree. We modify the Summary to reflect concisely the measure's provision for liability based upon inadequate notice.

■　　　　Petitioners Remington, Kaliher, and Stickney further argue that "[i]n order to provide an impartial and accurate explanation of the measure, attention must be focused on the uniqueness of the no-insurance provision. A major effect of this measure will be to force doctors to decide whether to continue to perform abortions for minors given the uninsured exposure." Petitioners Bauman and Stein assert that the Summary must explain that "doctors will not be able to obtain liability insurance for providing abortions on minors."

The no-insurance provision is unusual. That, presumably, is why the Attorney General chose to mention it in the Summary. It would be impracticable, given the 85-word limit of the Summary, to explain the remedies in greater detail. The mention of the no-insurance provision is appropriate; making an attempt to predict what the effect of that provision would be is not. Notwithstanding petitioners' arguments, the major effect of the measure would be—as we stated above—to impose on doctors a duty to give notice. The Attorney General's Summary is adequate in this regard.

■　　　　Petitioners Bauman and Stein argue that the language "[d]octor also may lose license" is insufficient, as the measure provides for mandatory medical license suspension

for not less than one year if the doctor has wilfully violated the notice provisions three or more times. However, the measure also provides that the doctor's license *may* be suspended in other circumstances. Thus, because whether the suspension is mandatory or discretionary depends on the number of violations and the wilfulness of the violations, the Attorney General's language is accurate in that regard. However, counsel for petitioners Remington, Kaliher, and Stickney correctly pointed out at oral argument that the doctor does not face *loss* of license, but only *suspension.* The Summary will be modified to so reflect.

In conclusion, we certify the following ballot title to the Secretary of State:

### DOCTOR MUST GIVE PARENT NOTICE BEFORE MINOR'S ABORTION

*QUESTION:* Shall state law require doctor to give notice to parent or custodian at least two days before minor's abortion?

*SUMMARY:* Doctor must give notice at least two days before minor's abortion. Notice goes to parent picked by minor or parent with custody. If no parent, notice goes to adult or agency caring for minor. Doctor may delay notice if doctor believes minor will die or suffer major physical harm. Notice excused if minor is victim of reported abuse at home or reported rape causing pregnancy. Minor and parent may sue doctor for inadequate notice. Doctors cannot insure against this lawsuit. Doctor may have license suspended.

Ballot title certified as modified.

Pursuant to ORAP 11.30(10) and notwithstanding ORAP 9.25(1), this certified ballot title will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment 10 days from the date of this decision, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator within seven days of the date of this decision. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration. If the court denies the petition, the Administrator shall issue the appellate judgment the next judicial day after denial of the petition(s) for reconsideration.