Argued and submitted July 27, ballot title certified as modified; decision shall become effective pursuant to ORAP 11.30(10) as decided August 19, reconsideration denied September 3, 1993

Lon T. MABON,
*Petitioner,*

*v.*

Phil KEISLING,
Secretary of State,
*Respondent,*

*and*

Peggy NORMAN
and Liz Kaufman,
*Intervenors.*

(SC S40331)

Peggy NORMAN
and Liz Kaufman,
*Petitioners,*

*v.*

Phil KEISLING,
Secretary of State
of the State of Oregon,
*Respondent.*

(SC S40316)
(Cases Consolidated)

856 P2d 1023

Melanie E. Mansell, Salem, argued the cause and filed the petition for petitioner, Lon T. Mabon.

Thomas A. Balmer, Deputy Attorney General, Salem, argued the cause for respondent. With him on the memorandum in response were Theodore R. Kulongoski, Attorney General, Virginia Linder, Solicitor General, and Richard D. Wasserman, Assistant Attorney General, Salem.

Charles F. Hinkle, ACLU Foundation of Oregon, Inc., Portland, argued the cause and filed the petition and memorandum in opposition for petitioners and intervenors, Peggy Norman and Liz Kaufman.

GILLETTE, J.

## GILLETTE, J.

This original proceeding consolidates two challenges to a ballot title certified by the Attorney General for a proposed initiative measure that would add a new section to Article I of the Oregon Constitution. Pursuant to ORS 250.067(1), the challenging parties submitted to the Secretary of State timely written comments on the earlier, proposed ballot title. Consequently, they are entitled to bring these challenges to the certified ballot title. ORS 250.085(2) and (5). On review, we modify the ballot title and certify it as modified.

The text of the proposed initiative measure provides as follows:

"The Constitution of the State of Oregon is amended by creating a new section to be added to and made a part of Article 1. The new section shall be known as 'The Minority Status and Child Protection Act' and will read as follows:

"**Section 41: MINORITY STATUS BASED ON HOMOSEXUALITY PROHIBITED.**

"(1)  In the State of Oregon, including all political subdivisions and government units, minority status shall not apply to homosexuality; therefore, affirmative action, quotas, special class status or special classifications such as 'sexual orientation,' 'domestic partnerships' or similar designations shall not be established on the basis of homosexuality.

"(2)  Children, students and employees shall not be advised, instructed or taught by any government agency, department or political unit in the State of Oregon that homosexuality is the legal or social equivalent of race, color, religion, gender, age or national origin; nor shall public funds be expended in a manner that has the purpose or effect of promoting or expressing approval of homosexuality.

"(a)  The State of Oregon, political subdivisions and all units of state and local government shall not grant marital status or spousal benefits on the basis of homosexuality.

"(b)  The State of Oregon, political subdivisions and all units of state and local government, with regard to public employees, shall generally consider private lawful sexual behaviors as non-job related factors, provided such factors do not disrupt the work place and that such consideration does not violate subsections (1) and (2).

"(c)   Though subsections (1) and (2) are established and in effect, no unit of state or local government shall deny to private persons business licenses, permits or services otherwise due under existing statutes; nor deprive, nullify, or diminish the holding or exercise of any rights guaranteed by the Constitution of the State of Oregon or the Constitution of the United States of America.

"(d)   Though subsections (1) and (2) are established and in effect, this section shall not limit the availability in public libraries of books and materials written for adults which address homosexuality, provided access to such materials is limited to adults and meets local standards as established through the existing library review process.

"(3)   The PEOPLE INTEND, that if any part of this enactment be found unconstitutional, the remaining parts shall survive in full force and effect. This Section shall be in all parts self-executing."

The Attorney General certified the following ballot title to the Secretary of State for the proposed initiative measure:

### "AMENDS CONSTITUTION: GOVERNMENTS CANNOT BAR DISCRIMINATION AGAINST HOMOSEXUALS, APPROVE HOMOSEXUALITY

"QUESTION:   Shall constitution bar laws forbidding discrimination against homosexuals, prohibit spending public funds in manner promoting or expressing approval of homosexuality?

"SUMMARY:   Amends state Constitution. Governments cannot:

" — bar discrimination against homosexuals;

" — advise or teach children, students, employees that homosexuality equates legally or socially with race, other protected classifications;

" — spend public funds in manner promoting or expressing approval of homosexuality;

" — grant spousal benefits, marital status based on homosexuality.

"Measure nonetheless allows adult library books addressing homosexuality with adult-only access. Government also cannot deny constitutional rights, services due under existing statutes. Public employees' private lawful

sexual behaviors considered non-job related if workplace undisrupted, consideration complies with measure."

Under ORS 250.085(4), we review ballot titles for substantial compliance with ORS 250.035 and 250.039.[1] Petitioner Mabon, one of the chief petitioners for the proposed initiative measure, challenges portions of the caption, the question, and the summary. Petitioners Norman and Kaufman challenge only the final sentence of the summary. We address the parties' arguments in that order.

## THE CAPTION

ORS 250.035(1)(a) requires a caption of not more than ten words that "reasonably identifies the subject of the measure." In this case, Mabon objects to the portion of the caption that reads "GOVERNMENTS CANNOT BAR DISCRIMINATION AGAINST HOMOSEXUALS." Mabon contends that, with that portion of the caption, the Attorney General has not reasonably identified the *subject* of the measure, but rather has speculated about a potential *effect* of the measure.

This court has held that "[t]he Caption requires only *identification* of the subject matter of the measure; it should not be * * * a vehicle for conclusions about how a measure may affect legal rights and duties." *Bauman v. Roberts*, 309 Or 490, 494, 789 P2d 258 (1990) (emphasis in original). In this case, we do not agree that the Attorney General has engaged in "speculation" in describing the measure as one that will prevent governments from barring discrimination against homosexuals. As discussed more fully below, there can be no question that that will be one of the effects of the

---

[1] ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

ORS 250.039 requires ballot titles to comply with a minimum standard of readability. No party challenging the ballot title in this case raises any issue under that statute to this court. We therefore do not address it further.

measure. Nevertheless, as noted, the role of the caption is reasonably to identify the measure's *subject*. We are not convinced that the Attorney General's caption, which emphasizes one particular *effect* of the measure, accomplishes that purpose. *See Ransom v. Roberts*, 309 Or 654, 662, 791 P2d 489 (1990) (noting that a proposed caption focused inappropriately on the measure's "perceived effects," rather than on its subject).

If enacted, the impact of this measure would be broader than the effect that the Attorney General has chosen to emphasize in the caption. The measure would not simply prevent governments from extending the protection of anti-discrimination laws to homosexuals; it would prevent governments from creating any classifications based on homosexuality. (For further discussion of this point, see *infra*, 317 Or at 414-15.) The certified caption is phrased too narrowly to communicate this broad impact of the measure. *See Baker v. Keisling*, 312 Or 385, 391-92, 822 P2d 1162 (1991) (narrow phrasing of caption would cause voters to be informed inaccurately of the scope and coverage of the measure; court certified alternative caption).

Mabon contends that "[t]he subject of the measure, from its own language, is a restriction on government from granting minority status based upon homosexuality." Thus, he asks this court to certify a caption that reads: "AMENDS CONSTITUTION, GOVERNMENT CANNOT APPROVE, GRANT MINORITY STATUS FOR HOMOSEXUALITY." However, the concept of government "granting minority status" to homosexuals has no recognized meaning outside of this measure, the phrase is not self-defining, and the measure does not itself define the phrase except as it is defined by the words of the measure following the clause, "minority status shall not apply to homosexuality." Thus, use of the term "minority status" in the caption would do little to inform the voters of the measure's subject.

That said, we nonetheless could include the phrase in the caption, albeit partially undefined, by putting it in quotation marks. *See, e.g., Baker v. Keisling, supra* (words "behaviors," "abnormal, wrong, unnatural and perverse," "sexual orientation," "sexual preference," and "quotas, minority status, affirmative action, or similar concepts," found in

proposed measure, included in ballot title). That is not a desirable course. Circumstances occasionally may compel the Attorney General (or this court) to use quotation marks around a word or a phrase from a proposed measure, but doing so runs the risk of creating a negative impression of the measure — some voters may interpret such a choice to suggest that the writer of the ballot title is at a loss to figure out *what* the measure means. If we can avoid the use of quotation marks and still keep faith with our statutory task, we shall do so. In this case, we believe that it is possible. The proposed measure's subject is the relationship between governments and homosexuality.

We conclude that the following caption substantially complies with the requirement that the caption reasonably identify the "subject" of the measure:

AMENDS CONSTITUTION:
GOVERNMENTS CANNOT APPROVE,
CREATE CLASSIFICATIONS BASED ON,
HOMOSEXUALITY[2]

THE QUESTION

ORS 250.035(1)(b) requires a question of not more than 20 words that "plainly phrases the chief purpose of the measure." The chief purpose is "the most significant aim or end which a measure is designed to bring about." *Glerum v. Roberts*, 308 Or 22, 28, 774 P2d 1093 (1989). In this case, Mabon objects to the Attorney General's question because, according to Mabon, "the phrase, 'bar laws forbidding discrimination against homosexuals,' reaches beyond the unambiguous language of the measure and assumes secondary effects." As with the caption, Mabon asks this court to certify a question employing the term "minority status."

As we noted above (and as we explain more fully below), we do not agree with Mabon's contention that the Attorney General has engaged in speculation in concluding that one effect of the measure will be to prevent governments

---

[2] Future legislatures should consider requiring that ballot title captions begin with a two-word statement, such as "AMENDS CONSTITUTION," that tells voters where the proposed measure would be placed in Oregon law, and then expanding the total number of words in the caption to twelve, in order to accommodate this important aspect of ballot titles.

from barring discrimination against homosexuals. That effect is certain. Nor do we agree with Mabon that any such effect will be "secondary."

Nevertheless, we are not convinced that that effect, which the Attorney General has chosen to emphasize in the question, is the "most significant aim or end which [the] measure is designed to bring about." As noted above and discussed below, the impact of the measure is broader than preventing the government from extending the coverage of anti-discrimination laws to homosexuals; it prohibits government from creating any classifications based on homosexuality. Moreover, as we previously have noted, "[t]o be of most help to the voter, the question should build on, and be consistent with, the caption." *Baker v. Keisling, supra*, 312 Or at 392. Therefore, we certify the following question:

QUESTION: Shall constitution bar governments from creating classifications based on homosexuality or spending public funds in manner expressing approval of homosexuality?

## THE SUMMARY

■     ORS 250.035(1)(c) requires "[a] concise and impartial statement of not more than 85 words summarizing the measure and its major effect." In this case, Mabon objects to use of the phrase "bar discrimination against homosexuals" in the summary. He contends that, "[i]n predicting a secondary effect, the Attorney General has departed from the strict impartiality required." Again, Mabon asks this court to use the phrase "minority status," arguing that "the proper approach is to confine the analysis, as much as possible, to the words actually employed in the text of the measure."

This court has held that "[s]peculation about potential secondary effects has no place in any part of [a] ballot title." *Bauman v. Roberts, supra*, 309 Or at 495. However, as we have noted already, the Attorney General's description of the measure as one that will prevent governments from barring discrimination against homosexuals is not based on speculation. Neither is such an effect "secondary." On the contrary, the idea expressed in the challenged sentence flows directly from the wording of the measure itself and describes one of the major effects of the measure.

The measure in this case provides that "minority status shall not apply to homosexuality." Although, as noted above, the concept of "granting minority status" to homosexuals does not have a recognized meaning outside of this particular measure, the measure itself undertakes to define the concept. Specifically, the measure provides that "minority status shall not apply to homosexuality; *therefore*, affirmative action, quotas, special class status or special *classifications such as 'sexual orientation,'* 'domestic partnerships' or similar designations *shall not be established* on the basis of homosexuality." (Emphasis supplied.) By inclusion of the clause following the word "therefore," the measure defines, at least in part, the meaning of the reference in the antecedent clause to "minority status." Thus, the measure itself gives meaning to the concept of "applying" or "granting minority status" to homosexuals.

One meaning of that concept, as provided for in the measure, is a prohibition against establishing "special class status or special classifications such as 'sexual orientation,' 'domestic partnerships' or similar designations * * * on the basis of homosexuality." Under the terms of the measure, then, if a government body were to establish a classification of "sexual orientation" based on homosexuality, that action would constitute the forbidden practice of granting or applying "minority status" to homosexuals. There can be no question that an anti-discrimination law that included within its protected classifications "sexual orientation," defined to include homosexuality, would fall within the scope of the measure.

Based on the foregoing analysis, we conclude that the Attorney General has not "[s]peculat[ed] about potential secondary effects" of the measure in describing the measure as barring laws that prohibit discrimination against homosexuals. There remains, however, Mabon's contention that the words of the measure should control.

This court has held that, "[i]n general—and absent a compelling reason to the contrary—the Attorney General should use the actual language of the measure in the Summary." *Sampson v. Roberts*, 309 Or 335, 340, 788 P2d 421 (1990). It also has been said that, "[w]hen the language in the measure is unambiguous, it is not the job of the Attorney

General or of this court to substitute its interpretation of the measure for the language of the measure itself." *Oregon Citizen's Alliance v. Roberts*, 308 Or 599, 606-07, 783 P2d 1001 (1989) (Carson, J., dissenting).

In this case, Mabon advocates use of the term "minority status," because that term appears in the measure itself. However, as we noted above, the concept of government "granting minority status" has no recognized meaning outside of this measure. Thus, use of the term "minority status" in the summary would not help the voters understand one of the major effects of the measure — the ban on laws prohibiting discrimination against homosexuals. Helping the voters understand that effect is a "compelling reason" for the Attorney General's divergence from the language of the measure itself. We decline Mabon's invitation to certify the alternative ballot title that he has proposed.[3]

Our rejection of Mabon's specific arguments does not end our discussion, however. There are at least two different things wrong with the four-word statement, "bar discrimination against homosexuals." The first lies in the use of a chain of three words, "bar discrimination against," that have the combined effect of creating a triple negative. All three, "bar," "discrimination," and "against," include the idea of opposition. Such awkward phrasing should be avoided where possible. Likewise, the use of the word "discrimination," while accurate, is better avoided (if possible), because of the negative context in which that word normally is used. While surely not intended that way by the Attorney General, saying that governments cannot oppose discrimination can be a "loaded" description. The same ideas are communicated in a less pejorative manner by deleting the challenged four-word description and substituting the following: "create classifications based on homosexuality."[4]

---

[3] Mabon's proposed ballot title contains several other minor changes not related to the issues discussed above. However, neither in his petition nor at oral argument did Mabon raise any specific arguments related to those changes. Consequently, we decline to discuss them.

[4] We derive this wording substantially from that used by the Attorney General in his original draft ballot title.

■     Finally, we consider the challenge brought by petitioners Norman and Kaufman to the final sentence of the summary. That sentence reads: "Public employees' private lawful sexual behaviors considered non-job related if workplace undisrupted, consideration complies with measure." Norman and Kaufman contend that "the last four words make the sentence so awkward and obscure that most voters will have no idea what it means." They have proposed the following alternative: "Public employees' private lawful sexual behaviors may be cause for discharge, if those behaviors disrupt workplace."

The final sentence of the summary attempts to summarize the following portion of the measure:

"The State of Oregon, political subdivisions and all units of state and local government, with regard to public employees shall generally consider private lawful sexual behaviors as non-job related factors, provided such factors do not disrupt the work place and that such consideration does not violate subsections (1) and (2)."

We agree that the Attorney General's attempt to summarize this provision is too unclear to be left in the summary of the measure. The Attorney General admits that the sentence is "difficult to read" and does not oppose the alternative proposed by Norman and Kaufman, providing that one further change is made: the Attorney General contends that the alternative sentence "would be more accurate and neutral if it used the term 'personnel action' rather than discharge." Petitioners agreed to that change at oral argument. We, too, agree. Therefore, we incorporate the alternative sentence, with the Attorney General's change, into the summary that we certify.

We make one other adjustment in the final paragraph. The second sentence, which begins with the phrase, "[g]overnment also cannot," should, for consistency, be moved up to the compendium of other things that government is forbidden by the proposed measure to do. Thus, there will be added, after the "Governments cannot" phrase, the following item: "— deny constitutional rights, services due to existing statutes." The last paragraph of the ballot title is rewritten to provide: "Measure nonetheless allows adult library books addressing homosexuality with adult-only

access. Public employees' private lawful sexual behaviors may be cause for personnel action, if those behaviors disrupt workplace."

## CONCLUSION

The following ballot title is certified for the proposed initiative measure:

### AMENDS CONSTITUTION: GOVERNMENTS CANNOT APPROVE, CREATE CLASSIFICATIONS BASED ON, HOMOSEXUALITY

QUESTION: Shall constitution bar governments from creating classifications based on homosexuality or spending public funds in manner expressing approval of homosexuality?

SUMMARY: Amends state Constitution. Governments cannot:

— create classifications based on homosexuality;

— advise or teach children, students, employees that homosexuality equates legally or socially with race, other protected classifications;

— spend public funds in manner promoting or expressing approval of homosexuality;

— grant spousal benefits, marital status based on homosexuality;

— deny constitutional rights, services due under existing statutes.

Measure nonetheless allows adult library books addressing homosexuality with adult-only access. Public employees' private lawful sexual behaviors may be cause for personnel action, if those behaviors disrupt workplace.

Ballot title certified as modified. This decision shall become effective pursuant to ORAP 11.30(10).