Argued and submitted May 11, ballot title certified as modified September 28, 1995

Lon T. MABON,
*Petitioner,*

*v.*

Theodore R. KULONGOSKI,
Attorney General of the
State of Oregon,
*Respondent,*

*and*

Daniel A. ROONEY
and Julie Davis,
*Intervenors.*

(SC S42051)

Daniel A. ROONEY
and Julie Davis,
*Petitioners,*

*v.*

Theodore R. KULONGOSKI,
Attorney General of the
State of Oregon,
*Respondent.*

(SC S42055)
(Consolidated for Argument and Opinion)

902 P2d 1171

Lawrence J. Hall, Silverton, argued the cause and filed the petition for petitioner Lon T. Mabon.

Charles F. Hinkle, Portland, argued the cause and filed the petition for petitioners Daniel A. Rooney and Julie Davis.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause and filed the responses for respondent. With him on the responses were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

Unis, J., dissented and filed an opinion in which Durham, J., joined.

## GILLETTE, J.

Petitioner Lon T. Mabon is a chief petitioner for the ballot measure that is the subject of the ballot title certified by the Attorney General in this case. Mabon submitted timely written comments to the Secretary of State concerning the draft ballot title and thereby preserved the right to reiterate those assertions in his petition to this court challenging the Attorney General's certified ballot title. ORS 250.067(1), 250.085(2).[1] Mabon challenges aspects of the Caption, Question, and Summary for the ballot title. We have consolidated for argument and decision, along with Mabon's petition, the petition of Daniel A. Rooney and Julie Davis (hereafter collectively "Rooney"), electors who also complied with the statutory prerequisites for bringing their ballot title petition in this court. Rooney challenges only the Summary for the ballot title.

We note at the outset that the context for our discussion in the present case includes our treatment of the challenges to the ballot title for Elections Division #13, *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 902 P2d 1143 (1995). This measure, Elections Division #17, and that measure differ only slightly, and we deem the variances to be immaterial for purposes of a ballot title. The variances are set out in the margin.[2] Accordingly, we shall not repeat here a

[1] The 1995 legislature amended ORS 250.035 and repealed ORS 250.039. Or Laws 1995, ch 534, §§ 1 & 19. Those changes, however, do not apply to the ballot title in this case. *See* Or Laws 1995, ch 534, § 20 (act applies to initiative petitions for which prospective petition is filed on or after effective date of act). The prospective petition in this case was filed before the effective date of the 1995 act, July 7, 1995.

[2] The variances between the two measures are underscored. The Attorney General used the phrase "civil rights" in the ballot title for Elections Division #13, wherein that term appears, but not in the ballot title for Elections Division #17, which does not contain that term in the measure.

Elections Division #13 states:

"The term minority status shall refer to any class or category of individuals created in the law as a *special civil rights classification* such as race, religion, gender, *national* origin, etc." (Section 5.)

"Such objection produced by one's moral standards and values is therefore not discrimination relating to *civil rights*, nor shall it be considered so by any unit of state or local government[.]" (Section 1(b).)

"Children, students and employees shall not be advised, instructed or taught by any government agency, department or political subdivision that a

discussion of challenges that were rejected in the context of Elections Division #13. None of those challenges is asserted to have, nor does any of them have, any greater validity due to different wording in this ballot title. Those challenges not discussed here have been considered and rejected for reasons already given with respect to Elections Division #13.

Before proceeding to the challenges, we set out the full text of the measure and the Attorney General's certified ballot title.

## THE MEASURE

Elections Division #17 states:

"THE MINORITY STATUS AND
CHILD PROTECTION ACT OF 1996
AN ACT

"The People of the State of Oregon do enact as follows:

"The Constitution of the State of Oregon is amended by creating a new section to be added to and made a part of Article 1. The new section shall be known as 'The Minority Status and Child Protection Act of 1996,' and will read as follows:

"SECTION 41: MINORITY STATUS BASED ON SEXUAL BEHAVIOR PROHIBITED

"1. Minority status shall not be based on sexual behavior or desires; therefore,

"(a) The term minority status shall refer to any class or category of individuals created in the law as a special classification such as race, religion, gender, national origin, etc.

"(b) Children, students and employees shall not be advised, instructed or taught by any government agency,

---

person's sexual behavior or desire is the legal or social equivalent to existing *minority civil rights classifications*." (Section 1(a).)

Elections Division #17 states in parallel provisions:

"The term minority status shall refer to any class or category of individuals created in the law as a *special classification* such as race, religion, gender, *nation* origin, etc." (Section 1(a).)

"Such objection produced by one's moral standards and values is therefore not discrimination relating to *minority status*, nor shall it be considered so by any unit of state or local government." (Section 1(c).)

"Children, students and employees shall not be advised, instructed or taught by any government agency, department or political subdivision that a person's sexual behavior or desire is the legal or social equivalent to existing *minority classifications*." (Section 1(b).)

department of political subdivision that a person's sexual behavior or desire is the legal or social equivalent to existing minority classifications.

"(c)  The People find that to be morally opposed to certain sexual behaviors such as homosexuality, when based upon a person's convictions, is a Right of Conscience in accord with Article 1 Section 2 and 3 of this Constitution. Such objection produced by one's moral standards and values is therefore not discrimination relating to minority status, nor shall it be considered so by any unit of state or local government; therefore,

"(1)  Public funds shall not be expended in a manner that has the purpose or effect of expressing approval of homosexuality.

"(2)  Marital status shall not be recognized or spousal benefits awarded on the basis of homosexuality.

"2.  Though subsection one is established and in effect, no licenses, permits, services or benefits shall be denied any person otherwise due under existing statute; nor shall the holding or exercise of any rights guaranteed by the Constitution of the State of Oregon or of the United States of America be deprived, nullified or diminished.

"3.  Though subsection one is established and in effect, with regard to public employees, it shall be generally considered that a person's private lawful sexual behavior is a non-job related factor, provided such consideration does not violate any provision of this Act or of the Constitution of the United States.

"4.  Though subsection one is established and in effect, books or literature in public libraries which promote or express approval of homosexuality shall be kept from minors; access made available only under parental supervision. Such material must meet local community standards established through the existing library review process.

"5.  The PEOPLE INTEND that if any part of this enactment be found unconstitutional, the remaining parts shall survive in full force and effect. This Act shall be in all parts self-executing. For the purposes of this Act, every Oregon resident and non-profit entity doing business in the State of Oregon has standing."

## THE ATTORNEY GENERAL'S CERTIFIED BALLOT TITLE

The Attorney General's certified ballot title for Elections Division #17 states:

"AMENDS CONSTITUTION: LAWS CANNOT GUARANTEE EQUAL TREATMENT FOR HOMOSEXUAL PERSONS

"QUESTION: Shall constitution say laws cannot guarantee equal treatment for homosexual persons, and forbid spending public funds in way approving homosexuality?

"SUMMARY: Amends state constitution. Forbids laws that guarantee equal treatment for homosexual persons. Government cannot:

"— teach or advise children, students, or employees that sexual behavior or desires equate legally or socially to race, religion, or gender;

"— recognize marital status or grant spousal benefits based on homosexuality;

"— spend public funds in way expressing approval of homosexuality.

"Public employees' private lawful sexual behavior treated as non-job related unless that treatment expresses approval of homosexuality. Bans pro-homosexuality books from public libraries unless books meet established local community standards."

## THE CAPTION

We review the Attorney General's certified ballot title for substantial compliance with the statutory requirements. ORS 250.085(5). ORS 250.035(1) requires a Caption of not more than 10 words that "reasonably identifies the subject of the measure."

Mabon contends that the Attorney General's Caption is misleading, biased, and confusing. Specifically, Mabon asserts that the Caption states the Attorney General's belief about an effect of the measure, rather than simply stating the measure's subject. Mabon asserts that the Caption is loaded with emotional content, calculated to frighten voters, and that it implies that homosexual persons should be guaranteed equal treatment. He seeks a Caption that would state: "Amends Constitution: Prohibits Minority Status Based On Sexual Behavior, Desires."

We have recognized, in the context of the ballot title for Elections Division #13 (where the underlying proposition was not contested), that the measure's proscriptive effect on the ability of government to recognize a right of homosexual persons to be free from discrimination was a concept properly included within a Caption identifying the subject of the measure. *Rooney v. Kulongoski (Elections Division #13)*, 322 Or at 35. The Attorney General's Caption thus identifies a concept within the subject of the measure when it speaks to that proposition. It does not, by its terms, carry any implication about whether or not the stated proposition is salutary and it does not, accordingly, appear to be calculated to frighten voters.

The Caption does, however, carry an unnecessary amount of rhetorical and emotional content in describing the subject of the measure when it is contrasted with, for example, the more neutral (albeit awkward) phrasing of the Attorney General's Caption for Elections Division #13 ("Amends Constitution: Homosexuality, Other Sexual Behavior Not Civil Rights Basis"). We conclude that the challenge is valid to the phrasing of the Caption, based on its rhetorical content, which may color the description of the subject of the measure. We will revise the Caption to reflect this concern.

Mabon's second challenge asserts that the phrase, "homosexual persons," in the Caption "confuses the difference between homosexual conduct and people who choose to practice it. The thrust of the measure is not against persons but against conduct." Mabon asserts that the Attorney General is trying to "fan the flames of opposition to the measure by focusing the voter's attention on persons rather than conduct."

Mabon's position ignores the fact that the lead-in to the substantive provisions of the measure states: "Minority status shall not be based on sexual behavior *or desires.*" (Emphasis added.) At various other places, the measure refers either to sexual behavior (*e.g.*, section 3) or to sexual behavior *or desire* (section 1(b)). The measure plainly includes, in important provisions and with equal linguistic dignity, sexual behavior *and* desires and does not, by its terms, draw the distinction that Mabon suggests. Certainly, the sponsors of the measure are free to argue to the voters

what they believe to be the main theme of their measure. But that does not mean that the Attorney General has not substantially complied with the law when he uses "homosexual persons" as an understandable referent for those who are covered by the concept of homosexual "behavior or desires." Mabon's challenge on this basis is not well taken.

To summarize, one of Mabon's challenges to the Attorney General's certified Caption — to the rhetorical content of the Caption — has merit. Consistent with the methodology for deciding these cases, the final wording of the Caption for the certified ballot title for this measure has been selected after application of the restrictions in ORS 250.035(2) (re: confusion among ballot titles). Discussion of that concern with respect to the present measure may be found in *Rooney v. Kulongoski (Elections Division #13)*, 322 Or at 43-47. Pursuant to that discussion, the text of the Caption certified by this court for this measure is: "AMENDS CONSTITUTION: RESTRICTS LOCAL, STATE GOVERNMENT POWERS CONCERNING HOMOSEXUALITY."

## THE QUESTION

ORS 250.035(1)(b) requires a Question of not more than 20 words that "plainly phrases the chief purposes of the measure." The chief purpose is the most significant aim or end that a measure is designed to bring about. *Mabon v. Keisling*, 317 Or 406, 413, 856 P2d 1023 (1993). The Attorney General's certified Question asks: "Shall constitution say laws cannot guarantee equal treatment for homosexual persons, and forbid spending public funds in way approving homosexuality?"

Mabon repeats arguments rejected here in the context of the Caption, as well as in the context of the Question for the ballot title for Elections Division #13. The only valid repeated concern (deemed valid in the context of the Caption, 322 Or at 72, and valid here again) is with the rhetorical content of the words, "[s]hall constitution say laws cannot guarantee equal treatment for homosexual persons."

Consistent with the methodology for deciding these cases, the final wording of the Question for the certified ballot title for this measure has been selected after application of the restrictions in ORS 250.035(2). Discussion of that issue with

respect to the present measure may be found in *Rooney v. Kulongoski (Elections Division #13)*, 322 Or at 47-49. Pursuant to that discussion, the text of the Question certified by this court for this measure is: "Shall constitution forbid basing civil rights on homosexuality, other sexual behaviors, desires; bar spending public funds in way approving homosexuality?"

## SUMMARY

ORS 250.035(1)(c) requires a "concise and impartial statement of not more than 85 words summarizing the measure and its major effects."

■■ Mabon raises several challenges that have been rejected here in the context of the Caption and Question, as well as in our discussion of the ballot title for Elections Division #13. Mabon also reasserts his challenge to the rhetorical content of the sentence, "Forbids laws that guarantee equal treatment for homosexual persons." We have found that challenge valid in the context of the Caption and the Question for this ballot title, 322 Or at 72 (re: Caption), 73 (re: Question), and we find it valid here as well. In addition, Mabon raises here two challenges that we considered valid in the context of the ballot title for Elections Division #13: He seeks the inclusion in the Summary of a reference to the express statutory and constitutional limitations on the scope of the measure (provided in section 2 of the measure) and revision of the treatment of the public library provision of the measure. *See Rooney v. Kulongoski (Elections Division #13)*, 322 Or at 40-41 (sustaining the same challenges under the same circumstances in the context of Elections Division #13). Those two challenges are equally valid here.

Rooney raises again the contention that the Summary should include a statement of the effect of the measure on local ordinances. We rejected that contention in the context of the ballot title for Elections Division #13, *Rooney v. Kulongoski (Elections Division #13)*, 322 Or at 41-42, and we reject it here again.[3]

---

[3] Rooney raises one additional point in support of the same underlying change. He asserts that, by focusing expressly on laws like those on housing and employment, the Summary would clarify that the measure would supersede only "laws" and not constitutional provisions. We do not believe that Rooney's proposed

To summarize, the Summary will be revised to obviate the concerns with rhetoric, to include reference to the limitations in section 2 of the measure, and to revise the treatment of the public library provision. Consistent with the methodology for deciding these cases, that final wording of the Summary for the ballot title for this measure has been selected after application of the restrictions in ORS 250.035(2). Discussion of that issue with respect to the present measure may be found in *Rooney v. Kulongoski (Elections Division #13)*, 322 Or at 49-54. Pursuant to that discussion, the text of the Summary certified by this court for this measure is:

"Amends state constitution. Government cannot:

"— base civil rights on homosexuality, sexual behavior or desires;

"— deny other constitutional rights, or licenses, benefits, services under existing statutes;

"— tell children, students, employees that sexual behavior, desires equate to classifications like race, religion, gender;

"— recognize homosexual marital status, spousal benefits;

"— spend public funds approving homosexuality.

"Public employees' private lawful sexual behavior treated as non-job related unless that treatment expresses approval of homosexuality. Public libraries: Pro-homosexuality books available to minors with parental supervision, must meet local standards per review process."

### CONCLUSION

The following ballot title is certified for the proposed initiative measure Elections Division #17:

### AMENDS CONSTITUTION: RESTRICTS LOCAL, STATE GOVERNMENT POWERS CONCERNING HOMOSEXUALITY

QUESTION: Shall constitution forbid basing civil rights on homosexuality, other sexual behaviors,

---

changes in the Summary necessarily would communicate precisely those points, and we further note that the certified Summary now will include express reference to the constitutional limitations stated in section 2 of the measure.

desires; bar spending public funds in way approving homosexuality?

SUMMARY: Amends state constitution. Government cannot:

— base civil rights on homosexuality, sexual behavior or desires;

— deny other constitutional rights, or licenses, benefits, services under existing statutes;

— tell children, students, employees that sexual behavior, desires equate to classifications like race, religion, gender;

— recognize homosexual marital status, spousal benefits;

— spend public funds approving homosexuality.

Public employees' private lawful sexual behavior treated as non-job related unless that treatment expresses approval of homosexuality. Public libraries: Pro-homosexuality books available to minors with parental supervision, must meet local standards per review process.

Ballot title certified as modified. This decision shall become effective pursuant to ORAP 11.30(9).

**UNIS, J.,** dissenting.

I adhere to my view that, to the extent that ORS 250.085(5) (1993) gives this court jurisdiction to draft and certify a ballot title for a proposed initiative measure that is different than the one certified by the Attorney General, that statute violates the principle of separation of powers embodied in Article III, section 1, of the Oregon Constitution. *Rooney v. Kulongoski (Elections Division #13)*, 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting). I would, therefore, dismiss this case for lack of jurisdiction.

Durham, J., joins in this dissenting opinion.