Argued and submitted May 13, ballot title certified August 7, 1997

Rich PEPPERS,
Bruce Adams and Robert Crumpton,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent,*

*and*

Bill SIZEMORE,
*Intervenor.*

(SC 44122)

942 P2d 273

Lynn-Marie Crider, Oregon Public Employees Union, Salem, argued the cause on behalf of petitioners. With her on the petition was Paul B. Gamson, of Smith, Gamson, Diamond & Olney, Portland.

John T. Bagg, Assistant Attorney General, argued the cause on behalf of respondent. With him on the answering memorandum were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Michael E. Farnell, of Hagen, Dye, Hirschy & DiLorenzo, P.C., Portland, argued the cause on behalf of intervenor Bill Sizemore. On the memorandum in opposition to the petition was Gregory W. Byrne, Portland.

KULONGOSKI, J.

Fadeley, J., dissented and filed an opinion.

## KULONGOSKI, J.

In this original proceeding, petitioners challenge the Attorney General's certified ballot title for a proposed initiative measure. Petitioners[1] are electors who, in a timely manner, submitted written comments about the Attorney General's draft ballot title. ORS 250.067(1). Consequently, petitioners are entitled to seek modification of the proposed ballot title in this court. ORS 250.085(2). We have considered each of petitioners' arguments and conclude that those arguments fail to demonstrate that the Attorney General's ballot title does not comply substantially with the requirements of ORS 250.035(2). *See* ORS 250.085(5) (establishing this court's standard of review of ballot titles). Accordingly, we certify the Attorney General's ballot title without modification.

Pursuant to ORS 250.067(2), the Attorney General has certified the following ballot title:

"AMENDS CONSTITUTION: PROHIBITS USING PUBLIC RESOURCES TO COLLECT MONEY FOR POLITICAL PURPOSES

"RESULT OF 'YES' VOTE:  'Yes' vote prohibits using public resources to collect or help collect political funds.

"RESULT OF 'NO' VOTE:  'No' vote rejects prohibition on using public resources to collect or help collect political funds.     .

"SUMMARY:  Amends constitution. Prohibits using 'public funds' to collect or assist in collecting 'political funds.' 'Public funds' defined to include public employee time, public property or equipment and supplies. 'Political funds' defined to include any expenditure supporting or opposing a candidate, ballot measure or initiative petition. Prohibition applies even if public entities are reimbursed for use of public funds for collection. Measure would prohibit public employee payroll deduction for any entity that

---

[1] Two petitioners are Robert Crumpton and Bruce Adams, the Executive Director and President of the Oregon Education Association and Oregon Association of Classified Employees, respectively. The other petitioner is Rich Peppers, the Director of the Political Department of the Oregon Public Employees Union, Local 503, Services Employees International Union.

uses any funds deducted for political purposes or that commingles political and nonpolitical funds."

Petitioners challenge all sections of the Attorney General's certified ballot title. We address their objections in turn.

■ Petitioners first object to the caption. They argue that use of the term "public resources" in the caption is misleading because, in their view, the proposed measure is not limited to prohibiting the use of public resources to collect money for political purposes. Petitioners argue that the "true subject" of the proposed measure is to ban all payroll deductions for voluntary employee contributions to any political action fund, candidate, or measure. Consequently, they argue that the caption should refer specifically to the prohibition against payroll deduction. Petitioners' argument is not well taken.

The caption of a ballot title is limited to 10 words and must "reasonably identif[y] the subject matter of the state measure." ORS 250.035(2)(a). The subject matter of the proposed measure is the prohibition of the use of public funds for collecting money for political purposes. That is a broad prohibition. *One* effect of that prohibition apparently would be to prohibit payroll deductions for public employee contributions to political causes.[2] However, there are other possible effects as well. Petitioners confuse the alleged *motivation* of the drafter for drafting the proposed measure with the actual *subject matter* of the proposed measure as written. Assuming that the primary motivation behind the drafting of this proposed measure was to prohibit payroll deductions of money to be used for political purposes, the subject matter of the proposed measure, as written, extends beyond payroll deductions. Indeed, given the scope of its wording, it would be misleading to characterize the proposed measure as pertaining only or even primarily to payroll deductions. We conclude that the Attorney General's caption does not fail to comply

---

[2] The parties agree that the prohibition would not prevent payroll deductions if those deductions did not include money that the recipient applied to any political purpose and that was not commingled with other funds that were used for political purposes.

substantially with ORS 250.035(2)(a) in any respect that is asserted by petitioners.

■ Petitioners next challenge both the " 'yes' vote" and " 'no' vote" result statements. Those statements serve to describe the result if the measure is approved or rejected by the voters. ORS 250.035(2)(b) and (c). Both statements use the term "public resources," and petitioners argue that the statements are misleading for the same reason that they asserted with respect to the caption. We reject that argument for the same reason discussed above.

■ Petitioners also challenge the summary, and they propose the following alternative summary:

> "SUMMARY: Amends Constitution. Law currently allows all employees to make political contributions by payroll deduction. Measure forbids payroll deduction of public employee political contributions and any other use of public property, equipment, supplies or employee time to assist in collecting funds if any portion of the collected funds are [*sic*] used to support or oppose candidates or measures. Ban applies even if the public body is reimbursed the costs of collection. Imposes penalties."

ORS 250.035(2)(d) provides that a ballot title must contain "[a] concise and impartial statement of not more than 85 words summarizing the measure and its major effect." The Attorney General's summary uses the term "public funds" in place of the term "public resources" used in the caption and result statements. Apparently, the certified ballot title uses the terms interchangeably.[3] Petitioners do not argue that the variation in terminology causes confusion. Instead, petitioners contend that use of the term "public funds" in the summary is misleading in the same way that petitioners argued that use of the term "public resources" was misleading. Again, we reject that argument based on the reasoning discussed above.

---

[3] The proposed measure uses only the term "public funds." At oral argument, counsel for the Attorney General explained that that term was replaced in the certified ballot title with the term "public resources" in the caption and the result statements to better inform voters of the broad scope of the prohibition. However, in the summary, the certified ballot title retains the term "public funds" in quotation marks and defines that term.

Petitioners also contend that the summary unnecessarily defines the terms "public funds" and "political funds." Petitioners argue that those terms are defined in unorthodox ways and that, therefore, the definitions are "unnecessarily confusing." Based on that premise, petitioners argue that use of both terms and their respective definitions should be deleted from the summary. Petitioners' argument is unpersuasive. The use of those terms and their respective definitions tracks the wording of the proposed measure. At heart, petitioners object to the wording of the proposed measure. The Attorney General's job is not to rewrite a proposed measure. Rather, in the context of the summary, it is to certify a summary that concisely and impartially apprises the voters of the subject matter and the major effect of the proposed measure. The inclusion of those terms and their respective definitions helps to summarize the proposed measure and its major effect. Therefore, such inclusion substantially complies with ORS 250.035(2)(d).

■ Finally, petitioners contend that the summary is insufficient, because it fails to explain that public employees currently may make voluntary political contributions by payroll deduction. Petitioners assert that only by including that background information can the summary adequately inform voters how the proposed measure would change current law. We reject that argument as well. ORS 250.035(2)(d) does not require that a summary describe the current state of the law.[4] It requires only that the summary concisely and impartially summarize the measure and its major effect. The Attorney General's summary meets those requirements.

In sum, we conclude that the caption, result statements, and summary of the Attorney General's certified ballot title do not fail to comply substantially with the requirements of ORS 250.035(2) in any of the respects urged by petitioners. Consequently, we certify the Attorney General's ballot title to the Secretary of State.

Ballot title certified. This decision shall become effective in accordance with ORAP 11.30(10).

---

[4] Of course, it often will be true that, in explaining how a proposed measure will change existing law, a summary implicitly will inform the voters of the current state of the law as well.

**FADELEY, J.,** dissenting.

This is a statutory proceeding to test a ballot title. Neither the Attorney General, who is legislatively required to propose a ballot title for proposed initiative petitions filed with the Secretary of State, nor interested electors, who may hear about a proposed initiative measure and its ballot title and desire to direct comments about how it should be changed to better reflect the measure's contents, are given much time by the pertinent statutes to do their jobs. The Attorney General has five business days from the time a preliminary initiative petition is filed to propose a tentative ballot title. ORS 250.065(3). The electors have 10 business days thereafter to learn of the proposed ballot title and to comment on needed changes. ORS 250.067(1). The Attorney General then has just five business days to consider the electors' comments, make any changes in the title, and certify to the Secretary of State the proposed ballot title that will be circulated with the measure to obtain voters' signatures so that the measure may be placed on the ballot sometime hence. ORS 250.067(2).

That ballot title, in part at least,[1] will then be printed on the ballot for the voters' ready reference in deciding whether to approve or disapprove the measure.

Perhaps in recognition of the short deadlines for the Attorney General to propose and the electors to suggest improvements to ballot titles, the legislature has prescribed that proposed ballot titles must meet only a lesser level of accuracy. Although a ballot title should not mislead and is to be an impartial statement, ORS 250.035(2), "substantial compliance" with the statutory requirements for ballot titles is good enough. ORS 250.085(5).

In two arenas, however, this court has held that substantial compliance requires a high degree of accuracy. One is in adherence to legislated limits on the number of words that may be used for each segment of the ballot title: 10 words for the caption means no more than 10; 15 words for

---

[1] The statutes do not require that the summary portion of a ballot title be printed on the voters' ballots. ORS 254.175. Many counties have opted to not print the summary there.

the result statement means no more than 15; and the 85-word limit for summarizing the contents of a measure is strictly enforced, no matter how long or complicated the text of that measure. The other area where a high degree of accuracy has been required by this court involves use in a measure of a special definition for words that otherwise have a common meaning to the populace, but where that commonly understood meaning is not the same as the meaning that a special definition assigns to those words for purposes of that measure. *Witt v. Kulongoski*, 319 Or 7, 14-16, 872 P2d 14 (1994); *Mabon v. Keisling*, 317 Or 406, 416, 856 P2d 1023 (1993). *See also Greene v. Kulongoski*, 322 Or 169, 175, 903 P2d 366 (1995) (employing negative descriptors serially and in close proximity risked voter confusion as to meaning, title deemed insufficient); *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 174, 777 P2d 406 (1989) (ballot measure would not enact what a word in the title conveyed, title deemed insufficient).

This case falls in the latter category. Not one but two terms or phrases have special meaning as specially defined in the measure. A main prohibition in the measure employs both of the specially defined terms: "No *public funds* shall be spent to collect or assist in the collection of *political funds.*" (Emphasis added.) That 16-word sentence is substantially expanded in meaning and coverage by the 95 words of special definition for the two underlined phrases contained in the measure. But the caption and result statements do nothing to inform the voters of that meaning and scope, although it is their office to do so. ORS 250.035. And while the summary goes some distance toward reporting the contents of the special definitions, it is also deficient, because it does not reflect that existing law will be changed. The result statements should show the impact of the measure, *i.e.*, what actual changes in law would result from adopting the measure.

I would agree with one petitioner that the ballot title's use of the phrase "public funds" in a nonstandard way is misleading. The Attorney General recognized the problem, but did not adequately solve it. Although the proposed title substitutes the word "resources" for the word "funds," the substitution does nothing to inform the voters that an unusual meaning of "funds" is intended because of a special,

expanded definition for that term. Changing the word "funds" to the word "resources" does not alert the voter to the fact or extent of the special definition used in the measure.

The same is true of the second phrase, "political funds," which also is defined in a way that goes well beyond the usual understanding of "funds" or "political." At a minimum, voters should be informed that the phrases have been given special meaning by putting the words "public resources" and "political funds" in quotation marks wherever they appear in the caption and result statements. No corrective change was offered by the Attorney General in that instance.

The major effect of the measure is to nullify, by constitutional amendment, existing statutes and government practices under those statutes relating to public employee union dues. Those statutes permit a public employee to direct her or his employer to deduct dues and other voluntary contributions to the labor organization to which that employee belongs. The measure extends so far as to prohibit complying with those statutes where there is not any cost savings to the government, further demonstrating the inadequately informing nature of using words like "funds" or "resources" (or even "money," a term that the proposed title uses) in describing the subject, results, or major effect of this measure. The measure is not limited to prohibiting a "political use" of *public funds* or *resources*, as those terms are generally understood.

The caption should inform the voters that special definitions are central to the scope of the measure's prohibitions by placing the specially defined terms in quotation marks and by advising, to the extent possible within the 10-word caption limitation, of the fact that special definitions apply, not common usage. And the fact that the measure operates in an area of governmental conduct that statutes in force presently regulate is also information needed by the voters to identify the subject of this constitutional amendment.

The Attorney General's change in the subject caption from the words of the measure—"public funds"—to use

the term "public resources" is commendable in that the measure's prohibitions are not limited to funds or money according to the special definitions it would enact. But the change simply highlights the problem of misinforming the voters without correcting it in a way that will be understood.

As the foregoing discussion demonstrates, all parts of the ballot title should be amended, to read as follows:

### AMENDS CONSTITUTION: PROHIBITS STATUTES PERMITTING "PUBLIC RESOURCES" USE TO COLLECT "POLITICAL FUNDS"

RESULT OF "YES" VOTE:   "Yes" vote prohibits using "public funds" to collect "political funds," enacts special definitions of terms.

RESULT OF "NO" VOTE:   "No" vote rejects prohibition on "public resources" use to collect "political funds," retains present statutes.

SUMMARY: Amends constitution. Prohibits using "public funds" to collect or assist in collecting "political funds." "Public funds" defined. Includes public employee time, public property or equipment and supplies. "Political funds" defined. Includes any use supporting or opposing a candidate, ballot measure or initiative petition. Prohibition applies even if public entities are reimbursed for use of public funds for collection. Measure prohibits public employee payroll deduction presently allowed by statute for any entity that uses any funds deducted politically or that commingles political and non-political funds.

I would certify the foregoing ballot title to inform the voters.